ELLIS, Judge.
Plaintiffs’ son, while riding as a passenger on a bicycle, was killed when struck by an automobile driven by Warren J. Brou, who was insured by Southern Farm Bureau Casualty Insurance Company. This suit was brought for damages arising from that accident.
An exception of res judicata, based on a release executed by plaintiffs, was filed and sustained in the trial court. From the judgment dismissing the suit, plaintiffs appealed.
The release was executed on December 19,1964, two days after the accident, but before plaintiffs’ son was buried. The discussions leading up to the settlement of the case and the execution of the release were conducted among Lynn E. Johnston, Southern’s adjustor; the defendant; Mr. and Mrs. LeBlanc, the plaintiffs; and Mrs. LeBlanc’s cousin, Viola Joseph, who acted in the capacity of an advisor to the LeBlancs. During the course of the discussion, Johnston told the LeBlancs that he could offer them no more than the amount of the funeral expenses in settlement of their claim. He also told them that they could get a lawyer, and that they might get a lot more money, or they might get nothing. During the discussion, Johnston also told them that the funeral expenses would probably be all they could get, that they might not get anything if they did not take that, and that “we thought that the deceased boy was just as much negligent as our insurer.”
At first, neither of the LeBlancs thought that the offer was high enough and did not want to accept it. However, after a good deal of discussion among them, and with Viola Joseph advising them to accept the offer, they agreed to take the money. Although both of the LeBlancs were illiterate, it is clear from the evidence that they understood that, in executing the release and accepting the settlement, they were fully releasing whatever claims they might have against the defendant and his insurance company.
After the agreement to settle was made, the adjustor filled out the release form and a draft in the amount of the funeral expenses. The LeBlancs made their marks on *143 the release, which was witnessed by Brou and the proprietor at the funeral home. At the trial of the case, the LeBlancs admitted that they had signed something, but denied having signed the release or having endorsed this particular draft. However, the evidence preponderates to the effect that the marks appearing thereon were made by them.
Plaintiffs now claim the invalidity of the release, based on alleged misrepresentation of facts and law made to them by Johnston at a time when they were deeply grieved. They allege that the conduct of Johnston amounted to fraud.
The law affecting compromises is set forth in Articles 3078 and 3079 of the Civil Code, which provide that a compromise has a force equal to the authority of the thing adjudged and that it can not be attacked on account of error of law or for lesion. However, such a transaction may be set aside when there exists an error in the person or on the matter in dispute, or when it is obtained through fraud or violence. Article 3073 of the Civil Code limits the effect of such compromises only to the matters which “appear clearly to be comprehended in them by the intention of the parties”. Parol evidence may be received to show the existence of any vices of consent which might affect the validity of the compromise, or to prove what the parties intended to be covered thereby. Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911 (1961).'
In this case, the evidence makes it clear that plaintiffs were aware throughout their discussions with Mr. Johnston that they were discussing a final settlement of the case. Although the release was not read to them in full, it was explained by Johnston, and they knew that in accepting the offer made by Johnston and in executing the release, they were releasing all claims which they might have against the defendant and his insurer. It seems clear from a reading of the testimony of plaintiffs themselves that no pressure was brought to bear on them during the discussions, and that they were made fully aware of their right to discuss the matter with an attorney, and of the fact that a suit might produce much more money if they desired to follow that course of action. It further appears from the testimony that the prime mover in obtaining the consent of the plaintiffs to the settlement was Viola Joseph, rather than Mr. Johnston. If the LeBlancs are operating under any error at all, it was clearly in error of law and not one of fact, and this forms no basis for setting aside a compromise.
The judgment of the trial court is, therefore, affirmed, with all costs of this appeal to be paid by plaintiffs.
Judgment affirmed.