219 So.2d 21 (1969)
Arthur CARTER
v.
Catherine FOREMAN, wife of/and Jerome Foreman, Community Construction Company, Inc. and Clover Investment Corporation.
No. 3287.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1969.
Rehearing Denied March 3, 1969.
*22 Melvin J. Giepert and Ronald Fontana, New Orleans, for plaintiff-appellee.
Joseph W. Nelkin, New Orleans, for defendants-appellants.
Before SAMUEL, CHASEZ and HALL, JJ.
HALL, Judge.
Arthur Carter brought this suit to void and annul ab initio a contract, note and mortgage on the ground of fraud and for damages, including attorney's fees. The defendants are Jerome Foreman, his wife, Catherine Foreman, Community Construction Company, Inc. and Clover Investment Corporation. At the commencement of the trial on the merits defendants' counsel stipulated that all defendants "are one and the same."
The case was tried before a jury which rendered a unanimous verdict in favor of the plaintiff cancelling the contract, note and mortgage from their inception and awarding plaintiff damages in the sum of $5,000.00 and $10,000.00 for attorney's fees. The Trial Judge rendered judgment in accordance with the verdict, and denied defendants' motion for a new trial. Defendants appealed.
The facts out of which this litigation arose are as follows:
Plaintiff is a 67 year old Negro who can neither read nor write but is able to sign his name. He is unintelligent and uneducated, a fact which is easily determined from reading his testimony.
One day in the Spring of 1966 Manuel Perez, a canvasser for Community Construction Company, Inc., telephoned plaintiff and asked if plaintiff planned on having any repairs done to his house. Plaintiff replied that he was interested but at the moment could not afford it and that he was having trouble with some insurance people. There is some dispute as to whether Perez told plaintiff his company gave help to people having insurance problems. Some days later plaintiff telephoned the number given to him by Perez and indicated he was ready to have the repairs done. The following day Perez and Jerome Foreman, president of Community Construction Company, Inc., called on plaintiff at his home and plaintiff told Foreman what repairs he wanted made. After conversing for some time about extraneous matters plaintiff accompanied Foreman outside where he helped Foreman measure the length of the house so that Foreman could determine the amount *23 of material needed for the roof work. No other examination of the premises was made by Foreman to determine the amount of work and materials necessary to complete the repairs plaintiff had told Foreman he wanted done. Plaintiff and Foreman went back into the house where Foreman filled in one of Community Construction Company's forms listing the repairs requested by plaintiff which consisted of: (1) shore and level the entire house; (2) stucco the entire brick chain wall foundation approximately 160 feet; (3) renail all loose weatherboards on south side of house; (4) replace approximately 10 weatherboards 10 feet long; (5) rescrew wrought iron on second story porch on south side of house; (6) supply and install a new galvanized iron roof on second story porch on south side of house; (7) supply and install a new asbestos shingle roof on extension of house approximately 300 square feet; (8) replace all missing or damaged asbestos roof shingles on main part of house; (9) price includes all labor and materials.
Foreman told plaintiff he would do a "good job" for $3,520.00 tax included. (Plaintiff wanted to be sure that this price included tax.) Foreman told plaintiff he would have to take a credit application because he assumed plaintiff could not pay cash. When plaintiff said he didn't have the money to pay cash Foreman read to him from a chart detailing various monthly payments and the number of payments that would have to be made. Plaintiff agreed to make payments of $93.75 per month for 84 months saying that he could handle that monthly payment since his monthly income was around $200.00 which he derived from rentals and social security. Foreman then filled in the blanks in the contract form showing the contract price to be $3,520.00 with payments to be made under a "Deferred Payment Plan" at $93.75 per month for 84 months. Plaintiff then asked Foreman to read the entire contract to him because he could not read. Foreman did so and plaintiff signed the contract.
That the payments called for by the contract amounted to a total of $7,875.00 nowhere appears in the contract, nor was plaintiff ever informed of that fact by Foreman. The only contract price ever quoted to him was $3,520.00, tax included.
The contract was signed by plaintiff on May 18, 1966 and on the same day Foreman procured plaintiff's signature to a note and mortgage. Although plaintiff was told he had signed a mortgage on his home neither the note nor the mortgage was read to him nor was he told the amount thereof. Both were made out for $7,875.00.
The mortgage note made payable to "bearer" was endorsed by Foreman "For collection for Clover Investment Corporation" and delivered to the National Bank of Commerce, Jefferson, for collection.
On the day following execution of the contract repairs to the roof were commenced by the contractor, Community Construction Company, Inc. The shoring work and all other work was subcontracted to one Jerome J. Allen.
During the shoring work arguments developed between plaintiff and Allen over the manner in which the work was being done. Allen testified that plaintiff would not allow him to level the house correctly and that plaintiff insisted the house be levelled "to the doors" meaning that it should be levelled only enough to permit operation of the doors without binding. Allen was told by Foreman to satisfy plaintiff so he simply levelled the house "to the doors." Allen does not contend that he levelled the house properly.
In view of the expert testimony of Mr. Herman A. Abry of Abry Brothers, Inc. specialists in house levelling and shoring, it is doubtful whether Allen was equipped to do a good job even if plaintiff had not interfered. Mr. Abry testified that for a proper shoring job to have been done on plaintiff's house the job would have required *24 6 men and a minimum of 40 jacks. Allen had only two laborers on the job besides himself. According to plaintiff's testimony Allen used only 6 jacks. Allen testified that he rented 13 jacks for the job (he owned no equipment himself although he held himself out to be a shoring contractor) and Foreman testified that he furnished Allen about 10 additional jacks. Mr. Abry examined the premises and testified the house was not level and the work had not been done in a workmanlike manner.
The trial of the case lasted four days during which the work done on the house was gone over in detail by the witnesses. We find no necessity to review the testimony in detail. Although the facts are in dispute evidence was presented to the jury that the stucco work was not properly done; that all the loose weatherboards on the southside were not renailed as called for by the contract; that all of the 10 new weatherboards called for were not furnished and those that were furnished were too short and split at the ends; that the work on the wrought iron of the porch was left insecure because the screw was screwed into a rotten stud; that old second-hand flashing was used on the roof and improperly applied; that one row of shingles was missing and that the house leaked immediately after the job was finished.
On June 25, 1966 plaintiff was presented with a completion certificate, and, according to his testimony, told that he had to sign it. He demurred because he was dissatisfied with the work, but when told there was a law requiring it, he signed the certificate through fear of the law. Plaintiff further testified "But if I would have knew that they had $7,800.00 on that bill, I don't know what I would have `mighta done' but it's one thing for sure, I wouldn't have signed, you can believe that. That's the `truf from my heart. I wouldn't have signed."
Several days after signing the completion certificate plaintiff received a notice from the bank. Being unable to read plaintiff took the notice to a friend who informed him he was indebted for the sum of $7,875.00. He apparently was amazed that he would have to pay over $7,800.00 for the contract he had entered into and was told to consult a lawyer.
Community Construction Company, Inc. was obligated under the terms of the contract "* * * to apply for a building permit, if required by appropriate governmental authority, and shall pay for the cost of obtaining the permit." However no permit was applied for, although the testimony shows that a building permit for a job of this kind was required.
Plaintiff adduced the expert testimony of Mr. Greenlee and Mr. Villmarette, both of them building inspectors for the City of New Orleans. Each testified after having inspected the work that the repairs were not made in a workmanlike manner. Mr. Villmarette also testified that the contract was not substantially performed. Mr. Bourgeois, general superintendent for Makofsky Construction Company who had been in the construction business over thirty years, also gave his expert opinion that the repairs were not substantially performed.
Messrs. Machuen and Wetter, qualified as experts on behalf of defendants, gave opinions to the contrary. Mr. Machuen was a probationary inspector for the City of New Orleans and Mr. Wetter had been a city building inspector for approximately a month.
The record leaves no doubt that the repairs done on plaintiff's house were worthless.
Appellants assign as errors that:
1) The conduct of the Trial Judge before the jury was manifestly prejudicial to appellants' case.
2) There is no proof in the record to substantiate a jury award of monetary damages to the appellee.
*25 3) There is no statutory, codal or contractual basis for an award to appellee of attorney's fees of $10,000.00.
4) The contract between the parties should not have been avoided for fraud; proof was not adduced before the jury to substantiate a charge of fraud in inception.

Assignment No. 1
In their brief appellants have quoted at length certain remarks made by the Trial Judge in the presence of the jury during the trial of the case. All of the remarks complained of seem to have been provoked by appellants' counsel. When taken in context we do not find that the remarks were such as to have a prejudicial effect on the jury. In this connection we might remark in passing that since by constitutional provision the appellate courts in Louisiana are judges of the facts as well as the law and have the power under LSA-C.C.P. Art. 2164 to "render any judgment which is just, legal, and proper upon the record on appeal," the conduct of a jury trial in this state is not to be judged with the same strictness as obtains at Common Law.

Assignment No. 4
We are of the opinion that there is sufficient evidence in the record for the jury to reach the conclusion that plaintiff honestly believed the entire job would cost only $3,520.00 tax included. Plaintiff was unintelligent, uneducated, and unable to multiply and was astonished when he found out that the payments of $93.75 per month for 84 months which he agreed to, amounted to more than double the price Foreman had quoted to him. He testified that had he known this he would not have entered into the contract.
We are also of the opinion that there is sufficient evidence in the record for the jury to reach the conclusion that Foreman realized plaintiff's deficiencies and intentionally withheld from him the fact that the payments would amount to $7,875.00.
And there was sufficient evidence for the jury to conclude that Foreman never intended to do a "good job" in the first place in that he quoted plaintiff a contract price without making an examination of the premises to determine the amount of work and materials necessary to do the job; in that he did not obtain a building permit which would have subjected the work to inspection by the City; in that he subcontracted the work to a self-styled shoring contractor who had no equipment; and in that only $113.00 of materials were used on the entire job.
Article 1848 of the Civil Code (LSA-C.C. 1848) reads as follows:
"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
Referring to this article this Court said in George A. Broas Co., Inc. v. Hibernia Homestead & Savings Association, 134 So. 2d 356:
The jurisprudence interpretative of this article has consistently reasoned from the major premise that fraud, unlike other allegations in civil cases, must be proved by more than a mere preponderance of the evidence. Since the accusation is a grave one, the courts have required strict proof thereof. However, the inherent difficulty of establishing fraud by direct evidence has also been recognized juristically; therefore, the courts have reasoned that an inference of fraud may be drawn from the existence of highly suspicious conditions or events, in conformity with the rationale of Article 1848."
The Supreme Court said in Succession of Molaison, 213 La. 378, 34 So.2d 897:

*26 "Where parties of somewhat equal experience and mental capacity enter into an engagement, the courts are reluctant to disturb it unless there is fraud. However, it is the duty of the courts to carefully and painstakingly investigate the circumstances surrounding transactions between a person of limited mental capacity and one experienced in business affairs, in order that substantial justice might be meted out." See also Gross v. Brooks, La.App., 130 So.2d 674, at page 678.
The verdict of a jury is entitled great weight and will not be disturbed unless manifestly erroneous. We find no manifest error in the verdict in this case insofar as it voided the contract, note, and mortgage.

Assignment No. 2
The jury awarded plaintiff $5,000.00 damages for mental anguish. We find no proof in the record sufficient to substantiate any award for mental anguish. The only proof offered was plaintiff's testimony that he could not sleep at night, and the record reveals that the probable cause of his sleeplessness was the quantities of coffee that he consumed.

Assignment No. 3
The jury's award of attorney's fees in the sum of $10,000.00 as additional damages was improper.
In Chauvin v. La Hitte, 229 La. 94, 85 So.2d 43, which was a suit to rescind the sale of an automobile on the ground of fraud, the Supreme Court said:
"* * * On numerous occasions this court has said that ordinarily attorney's fees are not assessable as an item of damages unless provided for by law or by contract. The clear import of the language of the opinions is that no award of them can be made if not so particularly authorized * * * no statutory or codal provision specifically authorizing an award of attorney's fees in a case such as this has been called to our attention, and the sales contract under consideration does not provide for it." See also Kiefer v. Bernie Dumas Buick Company, Inc., La.App., 210 So. 2d 569.
For the foregoing reasons the judgment appealed from is amended by eliminating therefrom the $15,000.00 award to plaintiff (the same being the sum of damages awarded by the jury for mental suffering and attorney's fees) and as so amended and in all other respects the judgment is affirmed; costs of this appeal to be borne by appellants and appellee in equal proportions.
Amended and affirmed.