228 So.2d 229 (1969)
Curley WILSON, Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
No. 2845.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1969.
Rehearing Denied December 4, 1969.
*230 Hall, Raggio, Farrar & Barnett, by Richard B. Cappel, Lake Charles, for defendant-appellant.
Grenese R. Jackson, Jennings, for plaintiff-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Wilson sues for personal injuries. Made defendant is the liability insurer of the motorist who struck him. The defendant appeals from adverse judgment awarding $16,658.50 to Wilson, subject to a credit of $5,000 received by him on an earlier "release".
The substantial issue of this appeal is whether the trial court erred in overruling the defendant's exception pleading res judicata.[1] This plea is based upon Wilson's execution of this release on October 6, 1967 for $5,000, discharging the insurer from all claims arising out of the accident of May 22, 1967.

I.
The plaintiff contends, and the trial court held, that the release was invalid because there was no real consent of the plaintiff to the compromise, due to the intolerable physical and financial circumstances in which the plaintiff was situated and which destroyed his freedom of will. The defendant replies that this is not a cause recognized by our law for annulling a compromise. We find the defendant is correct.
A valid compromise has the "authority of things adjudged". Civil Code Article 3078. A compromise cannot be annulled for error of law or for lesion. Id. It may, however, be rescinded for fraud or violence, as well as for error of fact as to a principal cause (motive) for making the contract, as to the person with whom it is made, or as to the subject matter of the dispute. Civil Code Articles 3078, 3079; see also, Civil Code Articles 1824-1826, 1850-1853; Cole v. Lumbermens Mutual Cas. Co., 160 So.2d 785 (La.App. 3d Cir. 1963); Note, Compromise in Louisiana, 14 Tul.L.Rev. 282 (1940).
*231 The plaintiff apparently contends (a) that there was error as to the principal motive, in that he did not know his claim was worth far more than the $5,000 for which he settled it, and (b) that his will was vitiated by lack of consent through the violence or duress exercised upon him by external circumstances and by the misinformation from a third person that a lawyer could not help him. See Smith, A Refresher Course in Cause, 12 La.L. Rev. 2, 9-13 (1951). (No contention is made as to any fraud or deception by the insurer's adjuster, nor as to this adjuster's participation in or knowledge of any alleged misinformation causing the plaintiff to settle his claim.)

II.
We accept the trial judge's findings of fact as to the circumstances surrounding the execution of the release:
"Plaintiff was 66 years old on the date of the accident and is classified as illiterate. He has no wife nor children and his only relatives consist of an aged and almost helpless mother and a sister who live in an adjoining parish. The only person that visited plaintiff with regularity during his 140 days in the hospital was Mrs. Lenad Enard with whom plaintiff boarded prior to the accident and who undertook to care for and nurse plaintiff when he was released from the hospital.
"On the Monday or Tuesday prior to the signing of the settlement on Friday, Mr. Wheeldon [defendant's adjuster] offered plaintiff $5,000.00 in settlement of the claim. Plaintiff turned this down and made a counter offer of $10,000.00. Mr. Wheeldon refused that but told plaintiff that if he changed his mind he could notify him and he would receive $5,000.00 less the amounts owed to the hospital and physicians.
"Prior to this time plaintiff had made an effort to get an attorney, but (for some reason or other) no attorney was consulted. Dr. Louis E. Shirley, Jr., plaintiff's physician, is of the impression that he talked to an attorney about the claim but cannot recall the attorney. Dr. Shirley did advise plaintiff that the only way he could get prompt settlement was to take the amount offered; that if plaintiff employed an attorney it would take a year or more to have the suit tried; and, further, that he would have to pay a substantial fee for the attorney and might not get a great deal more than the $5,000.00 offered.
"Dr. Shirley also advised plaintiff that it was time for him to be discharged from the hospital; that Charity Hospital would not accept him as a patient; that if plaintiff was not discharged from the hospital his hospital bill would increase at the rate of approximately $30.00 per day; and that medicare benefits were exhausted.
"Plaintiff's bill at that time was already $3,268.00, and his doctor bill was approximately $900.00, of which medicare had paid approximately $2,200.00.
"Plaintiff had just recently been released from traction and was then casted from his hip to his toes on his left leg, and with another cast on his right hip down to his knee, which immobilized his hip. Plaintiff was immobilized during his entire hospital stay. It is obvious that plaintiff needed nursing attention and, furthermore, that he needed physical therapy. * * *"
Some additional facts of relevance include:
The plaintiff's normal income is limited to his monthly social security payments plus whatever income he can derive from doing odd jobs around Jennings. Prior to his accident, this 66-year-old laborer received $92 monthly from social security and approximately $40 weekly from odd jobs. Since the accident he receives $97 monthly from social security, but he has been unable to accept employment.
Signing the release and compromising his claim enabled plaintiff to pay Mrs. Enard $40 weeklyas long as the money from the settlement lastedto care for *232 him. Had he not been able to pay, she would have been unable to care for him, and he had no place else to stay or to be cared for in his helpless condition.

III.
Plaintiff's principal arguments for annulling the release arise from:
The economic straits plaintiff faced once his discharge from the hospital became imminent. Dr. Shirley testfied: "He felt like he had no place to go."
The influence on plaintiff's decision to settle exerted by third persons who, plaintiff claims, had an overriding interest in an early settlementparticularly the attending physician, who said: "I may have influenced him more than I should have. By this, I mean, I did emphasize to him that he could either get the lawyer and make the settlement in a year or two, or either he could settle and have his money to go on now.", and
The fact that plaintiff, though he knew the advice of an attorney was desirable, did not consult one prior to making the settlement.
In annulling the release, our brother at trial was noticeably moved by the difficulties of plaintiff's situation:
"[S]ince we are dealing with an illiterate, aged plaintiff with no family, who was under serious financial pressure and in the intolerable position of having to leave the hospital; having to pay a hospital bill; having to pay for future nursing care, and having only one source to raise funds, and who was not advised by any attorney, this Court holds that the release was signed in error and must be annulled. * * * [T]he more thought given to the intolerable and untenable position in which this plaintiff found himself, the more convinced this Court is that the release must be set aside."

IV.
Neverthelessdespite these reasons which indicate that the plaintiff Wilson had no bargaining power to resist the defendant's offer and was instead under strong economic duress to accept it, we are unable to find that these constitute a ground recognized by our law for the rescission of a compromise.
Louisiana Civil Code Articles 1851 through 1853 provide that a contract entered into under duress that would cause fear of great injury to person, reputation, or fortune is invalid, even if the person favored by the contract did not exercise the violence or make the threats and was unaware of the duress. A compromise is subject to rescission when executed under such duress. Civil Code Article 3079.
However, the contract-invalidating duress referred to is that which proceeds from a fear of force or violence which wipes out freedom of consent; it connotes an actor performing an exterior act which gives rise to the duress, rather than the entire set of objective circumstances causing the victim to act as he does. Planiol, Civil Law Treatise, Volume 1, Nos. 277, 278 (LSLI translation, 1959); Ibid, Volume 2, Nos. 1070, 1072; Aubry & Rau, Obligations, Section 343a (1 Civil Law Translations 314, LSLI translation, 1959); Holstein, Vices of Consent in the Law of Contracts, 13 Tul.L.Rev. 362 and 561 at 569-79 (1939). No doctrinal or jurisprudential authority to the contrary is cited.
The duress here relied upon does not constitute a Code-recognized ground to rescind a compromise.
Nor did the advice of Dr. Shirley amount to duress. There was no element of threatening the plaintiff's person or property. The doctor simply counselled the patient that settlement under the circumstances was in the latter's best interest. By itself, the bad advice of a stranger to the compromise is not ground for rescinding it. LeBlanc v. Brou, 205 So.2d 141 (La.App. 1st Cir. 1967).

*233 V.
The plaintiff-appellee cites numerous decisions. We find they concern situations differentiated from the present.
This is not a case of error as to the nature of the contract. Civil Code Article 1841; Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963); Bergeron v. Port Allen Mortuary, Inc., 178 So.2d 442 (La.App. 1st Cir. 1965). The present plaintiff knew he was executing a settlement of his claim for personal injuries, and that the document he signed was a release in full.
Nor was the plaintiff in error as to the person with whom he was contracting or as to the matter in dispute. Civil Code Articles 3073, 3079; Moak v. American Auto. Ins. Co., 242 La. 160, 134 So.2d 911 (1961); Harris v. Stockman, 197 So.2d 365 (La.App. 2d Cir. 1967). The plaintiff knew that Mr. Wheeldon was the defendant's adjuster, and that he himself was compromising all claims arising out of the accident causing his injury. He did not think the settlement merely for medical expenses, as in Harris, but knew that it included all claims for damages for personal injury. He received a sum noticeably in excess of accrued medical costs to him.
A release may also be rescinded for error as to the principal cause or motive, i. e., "that consideration without which the contract would not have been made." Civil Code Article 1825; McKneely v. Turner, 193 So.2d 373 (La.App. 2d Cir. 1966). The plaintiff knew that he was releasing his claim against the defendant and granting a full discharge in return for being paid $5,000 immediately. He was not acting under any error of fact as to principal cause of the contract.
Error as to a material though not the principal cause may also be ground for annulment of a contract, but only if the other party knew or, from the circumstances, should have known, that the party acting in error regarded it as of the essence, as his motive. Civil Code Article 1826; Cole v. Lumbermens Mut. Cas. Co., 160 So.2d 785 (La.App. 3d Cir. 1964). No evidence supports such a ground for rescission here.
Nor is there any evidence to support rescission for fraud, Carter v. Foreman, 219 So.2d 21 (La.App. 4th Cir. 1969), or for coercion through illegal exaction, New Orleans & N. E. R. R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51.
It is unfortunate that the plaintiff did not receive the advice of an attorney before he executed the release in question. However, in the absence of legal requirement that he have done so, the compromise is not invalid on that account. Further, the plaintiff was fully aware of his right to consult with an attorney, and he could have refused to sign the release until he consulted with an attorney.

VI.
The plaintiff was fully aware of his situation, the nature and effect of the release, and the extent of the claim compromised. His consent to the release was voluntary. We cannot annul the transaction because it was a bad bargain for him or out of sympathy for the plaintiff's desperate plight at the time he compromised his claim.
The release was valid. The exception of res judicata should have been sustained, barring trial on the merits and the subsequent award of damages.
The judgment of the trial court is reversed, and the plaintiff's suit is dismissed at his cost.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.
Miller, J., recused.
NOTES
[1] We may say that the evidence supports the trial court's findings of the motorist's undoubted negligence, of Wilson's freedom from contributory negligence, and of the award for Wilson's serious permanent injuriesissues we need not discuss, in view of our holding that res judicata bars the suit.