404 So.2d 1008 (1981)
Michael MUNNA, d/b/a Michael Munna Construction Co.
v.
Mabel Buffone, wife of/and Salvador A. MANGANO.
No. 12323.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1981.
*1009 Glenn E. Diaz, Chalmette, for defendants-appellants.
Jerald N. Andry, Gilbert V. Andry, III, New Orleans, for plaintiff-appellee.
Before REDMANN, SCHOTT and KLEES, JJ.
SCHOTT, Judge.
This is a suit for the balance due plaintiff on an oral contract with defendants for carpentry work provided by plaintiff. Defendants reconvened for damages resulting from plaintiff's alleged breach of contract consisting of his defective workmanship. From a judgment in favor of plaintiff for $830,[1] defendants have appealed. The principal issue is whether an enforceable compromise agreement was entered into between the parties supporting the award of $830.
In June, 1978, the parties entered into an oral contract for plaintiff, a carpenter, to do the framing work for $5,181.70 on a new house being constructed by defendants. Construction was being financed by a bank which employed Kenneth Edwards as building inspector. On October 9 defendants had become dissatisfied with plaintiff's work and advised him in writing that they were terminating his contract and were employing another carpenter to complete the work. They advised plaintiff that they would charge him for their costs to complete the unfinished work, deducting that amount from his final payment. At this stage plaintiff had been paid $4,000 and was owed the balance of $1,181.70. On October 13 defendants advised plaintiff that they had received an estimate from another carpenter to complete the work for $425 and advised plaintiff that this would be deducted from his final payment to be made after final inspection of the project. Nonetheless plaintiff demanded full payment, and on October 17 the job was inspected by Edwards in company with defendants. This inspection resulted in a letter from Edwards to plaintiff, dated October 18, which contained a 17-item "punch list" and a notice that unless plaintiff started back on the job by 2 PM October 20 another carpenter would be put on the job. According to Edwards the work could be completed in three days. According to plaintiff he did comply with this letter and corrected or completed those items which he felt were his responsibility. Nevertheless, on October 24, 1978, defendants addressed the following letter to plaintiff:
"It appears that you do not know how to do proper work and I am getting another carpenter to properly finish your work.
In my conversation with you, I was told that you would allow $120.00 for someone else to install stucatto board because you felt that your carpenters in your words `would butcher up the job.'
To cover butted black board joints and vapor proof building or a days work $40.00. To cut header and construct same in a workmanlike manner, labor no charge, carpenter that assisted $25.00. To redo deadwood in corners, to properly fix ceiling by bay window, to properly fix ceiling in utility room, to properly install additional 2 × 4's in corner returns such as in ½ bath under stairs on first floor, and other corner returns that are missing $65.00.

*1010 To properly rehang bay window and bow window, and frame out with 2 × 4's following bottom lip of window. To secure double front window, to put 2 × 4 above window second floor left side, to properly rebuild arches $75.00.
To replace plywood that was installed on overhang, knowing that it was defected, and you were instructed not to nail up. Labor and materials $50.00.
I have gone over the above with Mr. Edwards in detail and he feels like we do that this work is better to be completed by someone else. It appears that even though you made an attempt at some of the items, we are no better off than we were in the previous letter.
To conclude this matter Mr. Edwards has stated that he will authorize the payment of $830.00 and have hired men to complete this work properly in a workmanlike manner. Present your bill to me in this amount. This $830.00 represents payment in full at our job."
Plaintiff did by letter of November 16 present a bill for $830, accepting this compromise. He did no more work on defendant's house and the framing was completed by another carpenter.
Plaintiff's suit pled alternatively for $830 on the theory that a compromise had been struck between the parties or $1181.70 which was the balance due under the original contract. The defendants' reconventional demand alleged that the house was left with a sagging room resulting from defective workmanship by plaintiff. In this court defendants argue that they never intended to include in the release those damages resulting from the sagging roof; they simply intended to settle for the work he had actually performed up to October 24.
Edwards testified that he had noticed this sag in the roof even before October, 1978, and had pointed it out to defendant, Mr. Mangano, who assured him that this problem would be taken care of with knee braces and collar braces. Edwards, who was defendants' witness and was qualified by them as their expert, testified that this was a minor problem which could have been corrected by two men in an hour's time at this stage of construction. At one point he stated that he had explained a dozen times that this could have been corrected in this fashion. With reference to his punch list of October 18 he stated that the sag in the roof "was so unimportant that I didn't point it out in my list. I discussed it with both Mr. and Mrs. Mangano. It had to be done." He went on to say that the next time he came to the job the roof had been finished and the sag which he now characterized as a "slight belly" was obvious.
Mr. Mangano admitted he was aware of the sag while plaintiff was still on the job and was under the impression that the sag would come out of the house. After plaintiff left the job he was told by another carpenter that he could get the sag out before he wrote the letter to plaintiff. Nevertheless, after plaintiff left the job following the October 24 letter defendants employed another carpenter to finish the framing, brought in the roofer and had the sheetrock installed in the interior. At trial they produced the carpenter who did this work and who testified that it would cost $2275 to eliminate the sag at the stage where the roof and sheetrock had been completed. However, he stated that this corrective work could have been accomplished before the roofing was completed at a cost of $180.
In order to have a valid compromise there must be a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. L.S.A. C.C. Art. 3073. Parol evidence is admissible to rescind a compromise whenever there exists an error as to the matter in dispute. C.C. Art. 3079, Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911 (1961). The trial judge properly admitted parol evidence in this case consisting of the testimony of the parties as well as the other witnesses and properly concluded that defendants intended to include in the compromise the sag in the roof. When the letter of October 24 was written plaintiff was still on the job and had $1,181.70 coming to him upon completion. *1011 There was a difference between him and defendants, including their expert, as to how much work was still required of him under the contract and their offer was for him to leave the job and be paid only $830 in full settlement of his claim, and he accepted that offer.
It is significant that Mr. Mangano, defendant, was the general contractor on this job and made the decision to cover up the area with the roof and the sheetrock without spending the $180 it would have cost to correct the sag at that point. His decision to cover up the sag and then claim $2275 after the fact is an insupportable position. The evidence shows that he had compromised his complaint about the sag along with whatever else may have been required of plaintiff for $830 and he was bound by this compromise.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] The judgment does not specifically adjudicate the reconventional demand. However, in their brief defendants recite that trial judge verbally informed counsel that their reconventional demand would be dismissed because of the "compromise" between the parties. Defendants acknowledged that the judgment has the effect of recognizing the compromise and thus resolving all matters between the parties, including defendants' reconventional demand.