553 So.2d 1004 (1989)
Dr. Ann OLIVIER
v.
XAVIER UNIVERSITY.
No. 88-CA-2328.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
Writ Denied January 26, 1990.
George Escher, Katner & Escher, New Orleans, for plaintiff/appellee.
Thomas A. Rayer, Denechaud & Denechaud, New Orleans, for defendant/appellant.
Before GARRISON, PLOTKIN and BECKER, JJ.
BECKER, Judge.
This appeal arises from the dismissal of plaintiff's suit against defendant, Xavier University, for breach of contract and denial of due process. Plaintiff, a tenured professor at Xavier University, brought suit seeking reinstatement and damages after the defendant terminated her employment on the ground of professional incompetence. After a trial on the merits, the trial court found that the defendant had accorded plaintiff all of her due process and contractual rights to appeal the termination of her employment, and dismissed plaintiff's action.
Plaintiff now appeals seeking reversal of the trial court's judgment. Specifically, plaintiff argues that defendant failed to apply Paragraph Seven of the 1958 American Association of University Professors (AAUP) guidelines which provides suggestions for the process of termination of a tenured professor. Plaintiff alleges that the defendant agreed to modify the existing contract of her employment to include the guidelines proposed in Paragraph Seven. Defendant successfully argued at trial *1005 that there was no such modification of the plaintiff's employment contract.
Dr. Ann Olivier was an associate professor of Philosophy at Xavier University for approximately twenty years, and had obtained tenure in 1974. Her contract of tenure granted a permanent teaching appointment until retirement or dismissal for cause. Xavier University is a private university, not a public university, and grants tenure by contract.
In February 1984, the chairman of the Philosophy department, Dr. Joe LeFevre, circulated to various members of the administration a letter in which he stated that he thought Dr. Olivier was not capable of doing her job. In April of 1984, the University President, Dr. Norman Francis, offered Dr. Olivier a contract to be staff librarian. The plaintiff would retain her tenure status but forfeit her right to teach. Dr. Olivier rejected this contract and demanded an immediate dismissal hearing.
Dr. Francis, then, offered plaintiff a contract to teach with the requirement that Dr. Olivier be monitored daily, which contract was accepted.
On September 20, 1984, Dr. LeFevre handed Dr. Olivier two documents, and told her that she could no longer teach. Dr. Francis mailed plaintiff a letter on the same day informing her of her right to a due process hearing. According to the defendant, the plaintiff was removed from the classroom on the grounds of professional incompetence.
A specially elected faculty committee then conducted a hearing, at which plaintiff was represented by counsel. At the hearing testimony was taken, evidence was introduced, and arguments were heard. A record of the entire proceedings was made. While the committee found that removal of the plaintiff from the classroom was a procedural error because insufficient notice was given and because serious, immediate harm had not been established, the committee did find that Dr. Olivier's teaching abilities were weak in some areas.[1]
*1006 Rejecting the findings of the faculty committee, Dr. Francis informed the plaintiff that her employment with the University would be terminated. However, Dr. Francis did inform the plaintiff that she would be entitled to have his decision reviewed by the University's Board of Trustees if she so desired.
A standing committee of the Board of Trustees, the Committee on Academic and Faculty Affairs, reviewed the record of the faculty hearing, as well as all evidence presented, and accepted both written and oral arguments on the matter. This committee recommended ratification of Dr. Francis' action, and termination of Dr. Olivier's employment on the basis of professional incompetence.[2] The Executive Committee of the Board of Trustees, acting on behalf of the entire Board of Trustees, accepted the committee's recommendation and ratified Dr. Francis's termination of Dr. Olivier's tenure on the ground of professional incompetence.[3]
Plaintiff then filed suit seeking specific performance, that is, reinstatement of tenure and employment with Xavier University. At a pre-trial hearing, the trial court limited the issues for trial to a review of the procedural aspects of plaintiff's claim, that is, whether the University dealt with plaintiff fairly and with due regards for her contractual rights of academic review. After a trial on the merits, the trial court held that:
"The University's Board of Trustees has the ultimate authority to decide matters such as the status of Dr. Olivier and *1007 to review decisions made by Dr. Francis. The Board conducted a review of the matter without compliance with Paragraph 7 of the AAUP's guidelines for faculty dismissal procedures. The Court holds that the Board of Trustees was acting within its power and authority in conducting review of Dr. Olivier's status without compliance with Paragraph 7. The record in the administrative and the judicial hearings contain no basis for holding the Board to compliance with Paragraph 7."
On appeal, plaintiff argues that the trial court's erred in finding that Paragraph Seven of the AAUP guidelines was not an implied provision in the contract of employment between Dr. Olivier and Xavier University. The contract of employment specifically provides that
the conditions of your appointment are subject to and in accordance with the policies and procedures of the faculty handbook and said document is hereby made a part of this letter of agreement and appointment. These handbook provisions include but are not limited to, academic freedom, notice of appointments, requirements of promotion, causes for dismissal, tenure and retirement.
The faculty handbook, which provides the procedures to be used for the termination of faculty appointments, clearly excludes any application of Paragraph Seven.
G. Procedures for Termination of Faculty Appointments
(1) Due Process for Terminations

If it is necessary to question the fitness of a faculty member who has tenure or whose term appointment has not expired, the appropriate administrative officers will ordinarily discuss the matter with him in a personal conference. The matter may be terminated by mutual consent; but, if an adjustment does not result, the faculty member may request a hearing or the President may order the commencement of said proceedings. The faculty member will be informed of the charges in writing.
The Academic Council will elect a committee of three (3) tenured faculty members from the ranks of associate professor and above to conduct a formal hearing. The members of this Hearing Committee should be both objective and professionally competent in relation to the particular case.
The procedures laid down in paragraphs 2, 3, 5, 8 of the "1958 Procedural Recommendations of the AAUP Commission on Academic Freedom and Academic Tenure" shall then be followed.[4]
*1008 Agreements legally entered into have the effect of law on those of who have formed them. La.C.C. article 1983. Courts are bound to give legal effect to agreements according to the true intent of the contracting parties. That intent is determined by the words of the contract when such words are clear and explicit and leave to no absurd consequences. La.C.C. articles 2045, 2046. Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect. Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). Further, one who signs a contract is presumed to know its terms and cannot avoid its provisions, absent fraud or error, simply because he fails to read or understand it. Allen v. Royale 16, Inc., 449 So.2d 1365 (La.App. 4th Cir.1984). The parties are bound by their agreement regardless of any seemingly harsh consequences, provided the agreement is not contra bonos mores or in violation of some prohibitory law. Smith v. Moncrief, 421 So.2d 1127 (La.App. 3d Cir.1982), writ denied, 426 So.2d 177 (La.1983), Tetlow v. Loyola University of New Orleans, 483 So.2d 1242 (La.App. 4th Cir.1986) writ denied, 488 So.2d 689 (La.1986). The meaning and intent of the parties to the written contract when the words of the contract are clear, explicit, and lead to no absured consequences must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. article 2276; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writ denied 422 So.2d 423 (La.1982); Chevron U.S.A. v. Martin Exploration Company, 432 So.2d 886 (La.App. 1st Cir.1983), reversed on other grounds 447 So.2d 469 (La.1984).
The words of the employment contract between Dr. Olivier and Xavier University incorporating the faculty handbook for the procedures on termination of a tenured professor are clear and unambiguous. The faculty handbook clearly provides for inclusion of paragraphs 2, 3, 5, and 8 of the guidelines set out by the American Association of University Professors. The faculty handbook and the contract clearly exclude paragraph seven of said guidelines. Reviewing the contract of employment and the faculty handbook, this court finds that the parties contractually intended to exclude paragraph seven from applying to any procedures established by Xavier University for the termination of tenured professors.
Further, we conclude that there is no merit to plaintiff's argument that Dr. Francis agreed to a modification of the contract through correspondence with plaintiff's counsel. Specifically, plaintiff contends that Dr. Francis agreed through correspondence, to apply the guidelines set out in Paragraph Seven to the appeals procedure before the Board of Trustees. This correspondence reveals that Dr. Francis indicated *1009 to plaintiff's counsel that it would be the Board's decision to apply the Paragraph Seven guidelines. The record is clear that the Board of Trustees did not agree to such a modification. Therefore, the trial court was correct when it found that the Board of Trustees was not subject to Paragraph Seven of the AAUP guidelines.
Plaintiff was accorded all the contractual and due process rights due her in the appeal of her termination.
Accordingly, we find that the trial court did not commit error in dismissing plaintiff's suit. The judgment of the trial court dismissing plaintiff's lawsuit against Xavier University is hereby affirmed.
AFFIRMED.
PLOTKIN, Judge, concurs with reasons.
I respectfully concur with the majority opinion that the trial court did not commit error in dismissing plaintiff's suit against Xavier University. Because the plaintiff was a tenured professor at Xavier University when her employment was terminated, this court should consider her classification and the entitlements provided by her tenured position in deciding whether she was properly terminated.
The tenured status of a teacher is a legislatively-created exception to the Louisiana employment-at-will doctrine. Thorne v. Monroe City School Board, 542 So.2d 490 (1989). The protection of academic freedom from arbitrary or repressive dismissal is the historic purpose of tenure. Thorne, supra, citing, Quinlan, State Teacher Tenure Statutes: An Appeal for Repeal, 9 J. Legislation 144 (1982); Kerwin, The Part-time Teacher and Tenure in California, 10 Golden Gate U.L.Rev. 765 (1980). Justice Dennis, who dissented in Thorne, expanded on the reasons for teacher tenure laws, noting that the laws were meant to promote good order and the welfare of the state and school system by preventing the removal of capable and experienced teachers because of political or personal whims. Id. at 494. Additionally, the status of tenure creates a classification that assures teachers that they will not be dismissed on the basis of their ideas or political beliefs.
The trial court found that the University had dealt with Ms. Olivier fairly and in accordance with her contract. In this case, I agree with the majority that Xavier clearly rejected Paragraph 7 of the AAUP's guidelines for faculty dismissal. However, some standard of due process must be afforded a tenured professor before dismissal, if there is to be any conformity with the underlying purpose of the tenure classification.
Since the University is not bound by the procedures prescribed in Paragraph 7, due process need not be defined solely in terms of Paragraph 7. Due process is a flexible standard depending on the alleged deprivation. Grace v. Board of Trustees for State Colleges and Universities, 442 So.2d 598 (La.App. 1st Cir.1983). I find that the evidence in this case supports a finding that not only did Dr. Francis meet Xavier University's procedural rules for dismissal but, even more so, he substantially complied with the guidelines of Paragraph 7.
I am aware that a specially-elected faculty committee that reviewed Dr. Francis' initial termination notice found that there was procedural error in the plaintiff's removal because insufficient notice was given and serious harm had not been established. However, after reviewing the record, I find that the University regulations contemplate giving authority to discharge a professor to the president, with a hearing by a faculty committee and review by the Board of Supervisors. Ms. Olivier's dismissal was in compliance with all procedure. Because Dr. Francis' conduct was neither arbitrary nor capricious and fully complied with due process of law, I do not believe that this court should substitute its judgment for that of the University authorities. See State v. Board of Supervisors of Louisiana State University, 17 So.2d 25 (1944).
NOTES
[1] The findings of the faculty committee were reported to Dr. Francis and Dr. Olivier on January 18, 1985: "The committee's finding with respect to the grounds of dismissal are these:

Evidence does not support the charge that Dr. Olivier is incapable of understanding and explaining material in a reasonably comprehensive context, although it does indicate her difficulties in these areas.
Evidence does not support the charge that Dr. Olivier is unable to clearly understand and explain many items of specific material, although she does have difficulty in this area.
Evidence does not support the charge that Dr. Olivier is not capable of effectively responding to students' questions, although she does have difficulty in this area.
The committee finds the fourth charge regarding Dr. Olivier's personal reactions, interpretations, and material itself to be vague and, thus, it has no response or finding of a substantive nature.
Evidence does not support the charge regarding Dr. Olivier's imposes her personal reactions and inabilities upon students.
Evidence does not support the charge that Dr. Olivier is incapable of effective organization of subject matter and of the mechanics of instruction, but the evidence does indicate her ineffective organization of subject matter in the classroom, her difficulties in class presentation, and her difficulties responding to student questions.
Evidence does not support the charge that Dr. Olivier is unable to understand and implement common sense principles of pedagogy, but the evidence does indicate her problems with pedagogy.
The committee's findings with respect to the due process of law accorded Dr. Olivier follow:
Dr. Olivier has been afforded due process of law during the events of spring 1984 which led to the offer of a non-teaching contract.
Dr. Olivier has been afforded due process of law during the events in late spring and summer 1984 leading to the offering of a teaching contract in July 1984 subject to comprehensive monitoring.
Dr. Olivier has been afforded due process of law in the implementation of the teaching contract offered in July 1984 until the time of her suspension from teaching.
Dr. Olivier has not been afforded due process of law in her extraordinary suspension from teaching duties on September 20, 1984 in that (1) serious and immediate harm was not satisfactorily established and (2) the initial notice of suspension was insufficient according to Section III, G(2) on page 11 of the Xavier University Faculty Handbook (August, 1980).
The findings of this committee are based on the evidence gathered and testimony presented during the formal hearings on January 14th and 15th of this year, in accordance with the procedures required by the Xavier University Faculty Handbook and the adopted paragraphs 2, 3, 5, and 8 of the 1958 Procedural Recommendations of the AAUP Commission on Academic Freedom and Academic Tenure."
[2] REPORT AND RECOMMENDATIONS OF THE COMMITTEE ON ACADEMIC AND FACULTY AFFAIRS BOARD OF TRUSTEES, XAVIER UNIVERSITY

RE: Termination of Ann Olivier
To: Board of Trustees and Executive Committee of the Board, Xavier University
In furtherance of the action of the Board of Trustees taken at its October 25, 1985 meeting, the Committee on Academic and Faculty Affairs of the Board has reviewed the entire record established in connection with the suspension and termination of Dr. Ann Olivier. The Committee's recommendations are based upon the entire transcript of the proceedings before the Faculty Review Committee, as well as a review of all documents, correspondence and exhibits which were offered to the Faculty Review Committee, as well as other documents submitted by Dr. Olivier and her counsel, and the administration of the University. In addition, Dr. Olivier was given the opportunity to file a memorandum brief in support of her position, and the University Administration, likewise, has filed a statement of its position. Finally, the Committee conducted a hearing where the parties were permitted an oral presentation of their positions.
It is the opinion of the Committee, based upon its independent review of all of the facts and circumstances surrounding the suspension of Dr. Olivier from her teaching duties, that it can therefrom, and does hereby make a formal recommendation to the Executive Committee of the Board of Trustees.
The Committee finds that the ultimate issue presented for determination is whether there exists sufficient cause, under the University Faculty Handbook, for the President of the University to terminate the employment of Dr. Ann Olivier as a tenured member of the University Faculty. The Committee further finds that the initial suspension of Dr. Olivier from her teaching duties was not an abuse of discretion on the part of the Administration as conferred by the Faculty Handbook. The Committee further finds that Dr. Olivier was afforded ample and full due process through the proceedings of the Review Committee as well as the opportunity afforded her to present this appeal to the Board of Trustees.
The Committee further finds that the record, as established before the Faculty Review Committee, supports the conclusion that sufficient and convincing evidence exists of serious academic inadequacies on the part of Dr. Olivier to fully justify and support the position of the President of the University to terminate her employment for cause as set forth in the Faculty Handbook, and the Committee further finds that the decision of the President is therefore a reasonable and proper exercise of his administrative authority and discretion.
It is, therefore, the recommendation of the Committee on Academic and Faculty Affairs that the Executive Committee of the Board of Trustees affirm the decision of the President of the University, and authorize him to implement his decision to terminate the employment of Dr. Ann Olivier, for cause, at such time and on such terms and conditions relating to her terminal compensation and other benefits as he, in his discretion, may deem appropriate and equitable under the circumstances.
[3] The Chairman of the Board notified Dr. Francis and plaintiff's counsel on December 3, 1985, that the Executive Committee of the Board of Trustees had accepted, unanimously, the Committee on Academic and Affairs' recommendation and made the decision to affirm the University's action to terminate the faculty status of Dr. Olivier.
[4] The guidelines established by the American Association of University Professors where outlined in its "Statement on Procedural Standards in Faculty Dismissal Proceedings." The paragraphs included in Xavier University's Faculty Handbook provide as follows:

2. Commencement of Formal Proceedings
The formal proceedings should be commenced by a communication addressed to the faculty member by the president of the institution, informing the faculty member of the statement formulated, and informing him that, if he so requests, a hearing to determine whether he should be removed from his faculty position on the grounds stated will be conducted by a faculty committee at a specified time and place. In setting the date of the hearing, sufficient time should be allowed the faculty member to prepare his defense. The faculty member should be informed, in detail or by reference to published regulations, of the procedural rights that will be accorded to him. The faculty member should state in reply whether he wishes a hearing and, if so, should answer in writing, not less than one week before the date set for the hearing, the statements in the president's letter.
3. Suspension of the Faculty Member
Suspension of the faculty member during the proceedings involving him is justified only if immediate harm to himself or others is threatened by his continuance. Unless legal considerations forbid, any such suspension should be with pay.
5. Committee Proceeding
The committee should proceed by considering the statement of grounds for dismissal already formulated and the faculty member's response written before the time of the hearing. If the faculty member has not requested a hearing, the committee should consider the case on the basis of the obtainable information and decide whether he should be removed; otherwise the hearing should go forward. The committee, in consultation with the president and the faculty member, should exercise its judgment as to whether the hearing should be public or private. If any facts are in dispute, the testimony of witnesses and other evidence concerning the matter set forth in the president's letter to the faculty member should be received.
The faculty member should have the option of assistance by counsel, whose functions should be similar to those of the representative chosen by the president. The faculty member should have the additional procedural rights set forth in the 1940 Statement of Principles on Academic Freedom and Tenure and should have the aid of the committee, when needed, in securing the attendance of witnesses. The faculty member or his counsel and the representative designated by the president should have the right, within reasonable limits, to question all witnesses who testify orally. The faculty member should have the opportunity to be confronted by all witnesses adverse to him. Where unusual and urgent reasons move the hearing committee to withhold this right, or where the witness cannot appear, the identity of the witness, as well as his statements, should nevertheless be disclosed to the faculty member. Subject to these safeguards, statements may when necessary be taken outside the hearing and reported to it. All of the evidence should be duly recorded. Unless special circumstances warrant, it should not be necessary to follow formal rules of court procedure.
8. Publicity
Except for such simple announcements as may be required, covering the time of the hearing and similar matters, public statements about the case by either the faculty member or administrative officers should be avoided so far as possible until the proceedings have been completed. Announcement of the final decision should include a statement of the hearing committee's original action, if this has not previously been made known.