615 So.2d 429 (1993)
PAT O'BRIEN'S BAR, INC.
v.
FRANCO'S COCKTAIL PRODUCTS, INC.
No. 92-CA-1002.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
Writ Denied May 7, 1993.
J. Forrest Hinton, Lawrence B. Mandala, McGlinchey, Stafford, Cellini & Lang, New Orleans, for defendant/appellee.
Gary J. Rouse, Mishthi Grace Ratnesar, Koch and Rouse, New Orleans, for plaintiff/appellant.
Before KLEES, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of defendant-appellee, Franco's Cocktail Products, Inc. (Franco's) and against *430 plaintiff-appellant, Pat O'Brien's Bar, Inc. (Pat O'Brien's), maintaining Franco's Exception of Res Judicata dismissing Pat O'Brien's Petition For Breach of Contract.
The facts leading to the litigation are as follows:[1]
Pat O'Brien's is an internationally renowned bar in the New Orleans French Quarter known for its distinctive fruit flavored drinks served in uniquely shaped glasses. The most famous of these is the "Hurricane". In 1941, the bar was incorporated under the name Pat O'Brien's Bar, Inc. and has operated since then under the name, Pat O'Brien's. The bar has become synonymous with the "Hurricane" drink and the phrase "Have Fun".
In 1979, Pat O'Brien's agreed to permit Franco's, a Florida Corporation, a limited use of the Pat O'Brien's name, "Hurricane" logo and the phrase "Have Fun". This limited use was in connection with Franco's sale of the dry non-alcoholic cocktail mix which for years was the base mix for the "Hurricane" drink. In exchange for this use, Franco's presumably agreed to pay Pat O'Brien's royalty commissions for sales outside of Louisiana. The commissions were calculated on the basis of sales accounted for by Franco's to wit: $1.45 per quart of mix sold; $1.50 per gallon of mix sold. Franco's submitted periodic statements detailing the amount of mix sold and the commissions due Pat O'Brien's. Franco's did not sell the dry mixes in Louisiana. Instead, Franco's agreed to give an affiliate corporation of Pat O'Brien's, Sirocco Enterprises, Inc. (Sirocco), exclusive distributorship rights to sell the dry mixes in Louisiana. Sirocco purchased the mixes from Franco's. The cost was invoiced separately by Franco's to Sirocco.
On December 22, 1982, Pat O'Brien's obtained state registration from Louisiana to protect its tradename, the "Hurricane" logo and the phrase "Have Fun".
In March, 1984, Franco's obtained Federal Registration # 1,270,985 for the Pat O'Brien's name and "Hurricane" logo.
Franco's alleged that it was the owner of the tradename, "PAT O'BRIEN'S & DESIGN" and that no other entity was entitled to use the tradename and mark. Franco's continued to pay royalty commissions on the sale of the mixes after acquiring the federal registration. Pat O'Brien's was unaware of Franco's federal registration until 1988 when Pat O'Brien's applied for federal registration of its name and logo and was refused by the United States Patent and Trademarks Office. Upon discovering Franco's federal registration of the name and logo, Pat O'Brien's demanded in a letter dated April 29, 1988 that Franco's voluntarily yield the federal registration of the trademark, "PAT O'BRIEN'S & DESIGN" to Pat O'Brien's, its rightful owner.
Franco's refused to tender the ownership of the federal registration and ceased remitting accounting records and royalty payments to Pat O'Brien's for the sale of the mixes using the name and logo. At this time, there remained an unpaid balance in the amount of $3,224.75 for sales of mixes using the name and logo from October, 1987 through March, 1988, which accounting had been sent to Pat O'Brien's. Franco's continued selling products using the Pat O'Brien's name and logo.
On January 23, 1989, Pat O'Brien's filed a Petition for Cancellation of Franco's registration of "PAT O'BRIEN'S & DESIGN" with the United States Patent and Trademarks Office, Trial and Appeal Board. The petition challenged Franco's right to the federal registration because of Franco's fraudulent representation that it was the owner and first user of the mark. No other claims were brought.
To avoid expensive and protracted litigation, Pat O'Brien's entered into an "Assignment and License Agreement" (the Agreement) with Franco's to secure ownership of Federal Registration # 1,270,985. The agreement was signed on, and had an effective date of, July 5, 1989.
*431 The terms of the Agreement provided for an assignment by Franco's of Federal Registration # 1,270,985, entitled, "PAT O'BRIEN'S & DESIGN" to Pat O'Brien's in exchange for the following consideration:
1) Franco's was granted a limited royalty free license to use "PAT O'BRIEN'S & DESIGN" as a trademark for dry non-alcoholic cocktail mixes throughout the world;
2) A promise that Pat O'Brien's would not use or license others to use "PAT O'BRIEN'S & DESIGN" in connection with the sale of dry non-alcoholic cocktail mixes;
3) Payment of $150,000.00 from Pat O'Brien's to Franco's payable in installments of $15,000.00 over an (8) year period from the date of signing secured by a promissory note signed by George D. Oechsner, III, President of Pat O'Brien's;
4) Termination of the Cancellation Proceeding # 17-710 filed by Pat O'Brien's;
5) Payment from Sirocco to Franco's in the amount of $8,057.25 to discharge its debt to Franco's for past accounts due.
Subsequent to the signing of the Agreement, Pat O'Brien's via letter dated July 18, 1990, requested a final royalty accounting from Franco's for sale of the "Pat O'Brien's brand cocktail mixes" for the period March 31, 1988 to July 5, 1989, the date the agreement was signed. Franco's refused to account for or tender royalties due during that period. In response, Pat O'Brien's filed the instant suit entitled, "Petition for Breach of Contract and Accounting" on December 12, 1990. The petition alleged that the Agreement signed July 5, 1989 did not release Franco's from its unpaid obligations arising out of the pre-existing oral royalty contract with Pat O'Brien's and sought payment of royalties owed for the period March 31, 1988 to July 5, 1989 and an accounting of same.
Franco's filed an Answer and Reconventional Demand. Pat O'Brien's filed a Motion for Summary Judgment on the Reconventional Demand. Franco's filed Exceptions of No Cause of Action and Res Judicata alleging that the Petition was barred by Res Judicata as a result of the July 5, 1989 settlement and agreement. In addition, Franco's filed a Cross Motion for Summary Judgment on its Reconventional Demand.
On January 10, 1992, the trial court heard oral arguments on the exceptions. On January 21, 1992, the trial court entered judgment in favor of Franco's granting its Exception of Res Judicata and dismissed the Petition. In addition, the judgment dismissed Pat O'Brien's Motion for Summary Judgment, Franco's Motion for Summary Judgment and Exception of No Cause of Action.
Pat O'Brien's appeals asserting the trial court erred in maintaining the Exception.
No written reasons were given by the trial court. By granting the Exception of Res Judicata we must conclude that the trial court found that the terms of the July 5, 1989 Agreement resolved all differences between Pat O'Brien's and Franco's related to the use of the name Pat O'Brien's and the "Hurricane" logo and was a compromise of Pat O'Brien's claims for royalties unpaid prior to that date. After a thorough review of the record we find the trial court erred in maintaining the Exception and dismissing the Petition.
In Tarver v. Oliver H. Van Horn Co., Inc., 591 So.2d 1366 (La.App. 4th Cir. 1991), writ den. 594 So.2d 891 (La.1992), this Court succinctly stated the law of res judicata relating to a transaction or compromise having the effect of the thing adjudged as follows:[2]
"... La.R.S. 13:4231 provided:
`The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed *432 by them against each other in the same quality.'
The absence of any one of these elements is fatal to an exception of res judicata. First Guaranty Bank v. Durham, 409 So.2d 380 (La.App. 4th Cir. 1982).
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent. La.C.C. art. 3071. A compromise or transaction, has between the parties, the effect of a thing adjudged. La.C.C. art. 3078; Barnhill v. Consolidated Medical, Disability & Life Trust, 569 So.2d 1115 (La.App. 3rd Cir.1990), writ denied, 572 So.2d 93 (La.1991).
An exception of res judicata is the proper procedural vehicle when a suit is barred by a valid written compromise or transaction. Watkins v. Sentry Insurance Co., 502 So.2d 1132 (La.App. 4th Cir.1987).
* * * * * *
Transactions and compromises regulate the differences which appear clearly to be comprehended in them by the parties and they do not extend to differences which the parties never intended to include in them. La.C.C. art. 3073. A compromise is valid if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Munna v. Mangano, 404 So.2d 1008 (La.App. 4th Cir.1981). Ordinarily, a meaning and intent of the parties to a written contract must be determined by looking within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. art. 1848; Oliver v. Xavier University, 553 So.2d 1004 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1279 (La.1990). An exception to this rule exists when there is a dispute between the parties as to exactly what matters were intended to be settled by the compromise agreement. La.C.C. art. 3079; Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911 (1961); Munna v. Mangano, supra." at pps. 1368-1369.
The trial court's finding as to intent of the parties is a finding of fact. As such, it may not be disturbed unless the evidence does not furnish a sufficient basis for the finding and is, therefore, clearly wrong. Canter v. Koehring, 283 So.2d 716 (La. 1973); Tarver, supra; Ellison v. Michelli, 513 So.2d 336 (La.App. 4th Cir.1987).
The record reflects that a bona fide dispute existed between Franco's and Pat O'Brien's as to the rightful ownership of the name and trademark, "PAT O'BRIEN'S & DESIGN". This is evidenced by the letter dated April 29, 1988 demanding relinquishment of the Federal Registration by Franco's to Pat O'Brien's; the Petition for Cancellation filed by Pat O'Brien's and the subsequent agreement signed July 5, 1989.
Franco's argues that the language of paragraph 18 of the agreement clearly evidences that no other written or oral understandings existed between the parties, hence the parties had to intend that a resolution of the outstanding royalties would be included as a necessary consequence of the agreement.[3] We disagree.
All necessary consequences of what is expressed in the Agreement, must be reflected within the four corners of the instrument. The Agreement consists of 21 paragraphs evidencing the intent and obligations of each party.
In paragraph 1 Franco's relinquished the Federal Registration of the name and trademark, the subject matter of the then pending litigation, to Pat O'Brien's in exchange for certain considerations specified in the remaining paragraphs. There is no language in the Agreement where Pat O'Brien's specifically agrees to relinquish royalty commissions owed for sales of cocktail mix prior to July 5, 1989. The only *433 paragraph addressing prior monies owed is in paragraph 7, to wit:
"PAT O'BRIEN'S further agrees to cause its affiliate company, SIROCCO ENTERPRISES, INC. to pay to FRANCO'S, at the date of signing hereof, $8,057.25 to discharge its debt to FRANCO'S for past accounts."
The amount in paragraph 7 reflects $11,292.00 owed by Sirocco to Franco's less a credit of $3,234.75 owed by Franco's to Pat O'Brien's for royalty commissions for sales from October, 1987 to March, 1988.[4] In order to keep the accounting of each corporation separate, the debts reflected in paragraph 7 were subsequently discharged by a payment of $11,292.00 from Sirocco to Franco and a payment of $3,234.75 from Franco to Pat O'Brien's. The $3,234.75 paid by Franco's is an example of a necessary consequence of what was intended in the Agreement, as evidenced by other documentary evidence.[5] Clearly, the Agreement does not evidence an intent that other royalty commissions owed by Franco's to Pat O'Brien's to be included.
We hold that the four corners of the Agreement do not reflect the intent of the parties with respect to the alleged royalties due from the period of March 31, 1988 to July 5, 1989. The record contains documentary evidence which, in our opinion, is insufficient to support a finding that the parties intended to compromise the royalties which are the subject of this litigation. According we reverse the exception of res judicata, but reserve unto Franco's the right to re-urge it subsequent to the trial of this matter should the evidence warrant same.
In the alternative Franco's asserts that the trial court incorrectly dismissed its exception of no cause of action, and, in brief, asks this court to maintain it.
It is obvious the trial court did not consider the merits of this exception because of the maintaining of the res judicata plea. Franco did not pursue remedial writs from that ruling. Under these circumstances we deem it inappropriate to consider the merits of that exception at this time. Franco's should reurge it at the trial level.
REVERSED AND REMANDED.
NOTES
[1] The facts we present are taken from the statements of both parties' briefs. There is insufficient evidence in the record to substantiate the entirety of these facts, however they are not really necessary for purpose of this opinion.
[2] R.S. 13:4231 was amended by Acts 1990, No. 521 effective January 1, 1991. However, the instant suit was filed prior to that, thus the previous legislative pronouncement on "res judicata", as explained in Tarver, is applicable.
[3] Paragraph 18 provides:

"This Agreement constitutes the entire Agreement of the parties, and, except as herein provided, there are not written or oral understandings or Agreements of the parties hereto related to the subject matter hereof." (emphasis added).
[4] These debts are evidenced by Exhibits C and G.

Exhibit C is an invoice dated January, 1988, sent to Sirocco from Franco's detailing the purchase of cocktail mix totalling $11,292.00. Exhibit G is a letter dated March 31, 1988 from Franco's to Pat O'Brien's detailing an accounting of royalty commission owed from October, 1987 to March 31, 1988 totalling, $3,234.75.
[5] Exhibit L is a memo dated June 27, 1989 evidencing payment of $11,292.00 from Sirocco to Franco.

Exhibit M is a letter dated July 11, 1989 from Franco's to Pat O'Brien's in the amount of $3,234.75 for royalties due through March 31, 1988.