HAMITER, Justice.
 

 Mrs. Clemmie Moak instituted the instant suit to recover damages for personal injuries sustained by her in a collision between an automobile owned and driven by her husband (Clarence Moak), in which she was a passenger, and a train belonging to and operated by the Illinois Central Railroad Company, one of the defendants herein. Also named and cited as a defendant was the American Automobile Insurance Company, the insurer of the husband’s car.
 

 In her original petition plaintiff alleged primarily that the accident resulted solely from the gross negligence of the railroad company. However, she averred alternatively that Clarence Moak and the railroad company were concurrently negligent. In the further alternative she pleaded the negligence of her husband as the sole proximate cause of the accident.
 

 Without answering, the insurance company specially pleaded res judicata, the basis of which plea was a purported written release granted in favor of such defendant by Mr. and Mrs. Moak which recited payment to them of $242. Also, the railroad company filed an exception of no right of action grounded on the release of the insurance company, allegedly a co-tort feasor,
 
 *163
 
 which contained no reservation of rights by the grantors as to the exceptor.
 

 Thereupon, plaintiff amended her petition, she asserting the invalidity of the release in that it was confected without consideration and through fraud, misrepresentation and error. Specifically, she alleged: “That there was no meeting of the minds as to the purported subject matter of the Release; that there was lack of adequate consideration for said purported Release; * * * that in fact this purported release was supposed to be only a release for the personal belongings of Mr. and Mrs. Moak which were destroyed in the automobile and it was definitely not the understanding or intention of Mrs. Moak or Mr. Moak to release the defendants, namely, American Automobile Insurance Company and/or Illinois Central Railroad Company, from any liability for personal injuries, rights or claims accruing to Mr. or Mrs. Moak when they executed the said Release.”
 

 The district court sustained the mentioned plea of res judicata and exception of no right of action, following two separate hearings thereon at which considerable evidence was adduced, and accordingly dismissed the suit. The judgment was affirmed by the Court of Appeal. (See 127 So.2d 6.) We granted a writ of certiorari or review at the instance of plaintiff.
 

 The instrument in question, bearing date of October 3, 1957, was prepared on a printed form. Signed by plaintiff and her husband and reciting a consideration of $242, as aforesaid, it purports to release and discharge “Clarence Moak and American Automobile Insurance Company * * * from any and all actions, causes of action, claims and demands of whatsoever kind or nature on account of any and all known and unknown injuries, losses and damages by me/us or my/our property sustained or received on or about” August 10, 1957 through the above mentioned collision.
 

 The instrument, in printed verbiage, further states :
 

 “It is expressly understood and agreed that this release and settlement is intended to cover and does cover not only all now known injuries, losses and damages but any future injuries, losses and damages not now known or anticipated but which may later develop or be discovered, including all the effects and consequences -thereof.
 

 “And I/we hereby declare that I/we fully understand the terms of this settlement ; that the amount stated herein is the sole consideration of this release and that I/we voluntarily accept said sum for the purpose of making a full and final compromise, adjustment and settlement of all claims for injuries, losses and damages resulting or to result from said accident.”
 

 
 *165
 
 The concluding language of the instrument, appearing in longhand, is this: “It is agreed and understood that the execution of this release in no way affects my claim under the ‘medical payment’s’ portion of my policy.”
 

 As defendants point out, the Louisiana Revised Civil Code provides that a compromise or transaction has (as between the interested parties) an effect equal to the authority of things adjudged, and it cannot be attacked on account of any error in law or any lesion. Article 3078. However, with equal force, our Civil Code also declares :
 

 “Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
 

 “The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.” LSA-Civil Code, Article 3073.
 

 “A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.” LSA-Civil Code, Article 3079.
 

 Keeping in mind these codal provisions, which clearly contemplate the introduction of parol evidence to show error as to the subject matter of a compromise or fraud in its confection, we proceed to examine the facts and circumstances surrounding the execution of the purported release involved here.
 

 Shortly after the accident that occurred on August 10, 1957 a wrecker was summoned to remove the Moak car from the scene thereof; and while the towing process was under way a fire occurred in the damaged vehicle and destroyed certain personal effects of the Moaks contained therein, the total value of which admittedly was $342. The Moak policy furnished coverage for such destroyed contents to the extent of $100, this in addition to its providing insurance respecting the automobile itself for fire, collision, liability, property damage and medical payments. And on August 17, 1957 the defendant insurance company, through its adjuster, paid Mr. Moak the mentioned $100 and the further sum of $747.50 for the damage to the car caused by the collision and the fire. Later, Mr. Moak attempted to collect the balance of his personal effects loss ($242) from the Globe Indemnity Company, the liability in
 
 *167
 
 surer of the wrecking service; hut he was unsuccessful.
 

 On October 3, 1957 Mr. Moak visited the office of the adjuster for the defendant insurer for the sole purpose of discussing (under the property damage feature of his policy) a claim against him made by the railroad company for damage to its engine; however, while there he mentioned that he had been unable to obtain payment from the Globe Indemnity Company for his car contents loss. The adjuster told him that he would try to collect the amount from Globe and that “I think my company, as a company, stands a better chance of collecting from these people than you as an individual would.” During the same visit the disputed release was prepared, it reciting a consideration of $242, and was signed by Moak. The two then went to the Moak home where plaintiff was confined, because of the incapacitating injuries sustained in the accident, and she affixed her signature to the instrument without reading it.
 

 Mr. Moak testified that, from his conversation with the adjuster, he understood the $242 was only to reimburse him for the destroyed personal effects and the defendant insurer could and would get it back from the Globe Indemnity Company. Also, both he and Mrs. Moak were positive that she was told by the adjuster, when asked to sign the release, that the money was solely for such purpose. Further, they insisted that they had no intention whatsoever of releasing any claim for her personal injuries, such claim never having been discussed.
 

 The adjuster denied that he told Mrs. Moak that the money was merely to provide reimbursement for the mentioned destroyed articles. However, he was very frank in admitting that the uncompensated balance therefor ($242) was the basis for arriving at the amount recited in the release and that nothing whatever was ever mentioned about her personal injury claim. He also admitted having said that he would try to obtain the money from Globe and that his company was in a better position to get it than Mr. Moak.
 

 When asked specific questions about whether he inquired of Mrs. Moak if she knew that she was releasing the insurance company from her personal injury claim he replied: “No sir, I could not say that” and “I can’t say that she did.” He also conceded that if Mr. Moak testified that he understood that the defendant insurer would pay him the $242 for the destruction of his personal effects and get it back from the other insurance company that it “could be a misunderstanding of the facts. I am sure he would not lie.”
 

 ' After considering all of the evidence adduced we are certain that neither plaintiff nor her husband thought or intended that the instrument signed by them would release the insurance company from her
 
 *169
 
 claim for personal injuries; and hence we conclude that it is without effect because of error. Several circumstances support their testimony that they understood that payment of the $242 constituted solely a friendly gesture on the part of Moak’s insurer to assist them in collecting the balance of their fire loss. Firstly, the sum paid coincides exactly with the amount of the uncollected balance. Secondly, the amount of the release ($242) appears to be extremely small in view of the nature and extent of plaintiff’s injuries which, in addition to the complete severance of a finger that occurred at the time of the collision, undoubtedly will leave permanent impairment in the use of her right arm and shoulder. Thirdly, Moak himself had no claim against his own insurer for his or his wife’s injuries, yet he was required to sign the release. Fourthly, and quite significantly, there was nothing mentioned during the entire negotiations regarding a personal injury claim on the part of Mrs. Moak — one that was her separate property. And lastly, but not the least in importance, the conduct of the adjuster himself was such as to warrant the understanding entertained by the Moaks. We refer particularly to his admitted remarks that he would try to recover the uncompensated fire loss ($242) from the other insurance company, since he was in a better position to get it than the Moaks, and to his making the consideration for the release the exact amount of such loss without even stating to plaintiff or her husband that he was tendering the money for her personal injuries, he at the time not being sure that she was aware of the tender’s purpose. It may be said that perhaps such conduct did not of itself constitute the perpetration of fraud; but certainly it was sufficient to give rise to a misunderstanding or error on the part of plaintiff as to the subject matter of the release.
 

 Much emphasis has been placed by the defendants on the fact that the printed release form contained the handwritten reservation of medical payments (quoted above) which was inserted at Mr. Moak’s request. But the reservation appears unimportant here when it is recalled that the defendant insurance company had previously satisfied certain contracmral obligations to Mr. Moak under the terms of the policy. Those remaining in his favor respected only the medical payments; and evidently, in requesting the insertion, he merely sought to protect himself as to them.
 

 The defendants have cited several cases which they say hold that after a written compromise agreement is executed, irrespective of what is said in negotiations leading up to the confection thereof, its terms alone are controlling and cannot be varied by parole evidence. Initially, we note that all of them were decided by Courts of Appeal and that in none was an application for a writ of review on the instant issue
 
 *171
 
 made to this court. Moreover, only two, namely Blades et al. v. Southern Farm Bureau Casualty Insurance Company, La. App., 95 So.2d 209, 211, and Tooke et ux. v. Houston Fire and Casualty Insurance Company et al., La.App., 122 So.2d 109, 110, contained any language which could possibly be said to sustain the above proposition contended for by the defendants. However, with respect to these two cases a careful consideration thereof reveals that the language relied on appears to be dicta, inasmuch as in each the Court found no error on the part of the plaintiff.
 

 Thus, in the Blades case the court concluded :
 

 “ * * *
 
 We do not mean to say that the adjuster did make such assur
 
 ances, as the evidence is very conflicting on this score, and the Lower Court evidently believed the adjuster’s side of the story.
 

 “Article 3078 of the LSA-Civil Code provides that voluntary compromise agreements, lawfully consummated have the force of a definite judgment in such transactions, however, may be upset by vices of consent consisting of error, fraud, violence and threats, * * *.
 
 We do not believe that any of the said vices of consent are apparent in this case.
 
 * * * ” (Italics ours.)
 

 And in the Tooke case the couri sa;d:
 
 "Though the fact is not established
 
 conceding arguendo, that defendant’s adjuster informed Mrs. Tooke that the release covered only the damage to the automobile, such a representation is of no import. * * * ” (Italics ours.)
 

 Nevertheless, if the holdings in the cited cases were as contended for by these defendants it would seem that such were in direct conflict with the above quoted codal provisions.
 

 Further, in its brief to this court, the defendant insurance company argues that “Wlieie one seeks to rescind the contract claimed to be induced by error or fraud, he must return or tender the benefits received.” And in support of this argument it asserts that the plaintiff made no effort to return the $242 which was the consideration for the compromise. However, we note that there has been no pleading by which this issue was ever created. Nor is there any evidence in the record disclosing whether plaintiff did or did not offer to return the mentioned amount. Under these circumstances it must be concluded that such argument is without merit.
 

 For the reasons assigned the judgments of the district court and Court of Appeal are reversed and set aside, the plea of res judicata and the exception of no right of action are overruled, and the case is re
 
 *173
 
 manded to the first named court for further proceedings in accordance with law and the views hereinabove expressed. The defendants shall pay all costs incurred to this time. All further costs shall await the final determination of the litigation.