656 So.2d 55 (1995)
EM NOMINEE PARTNERSHIP COMPANY, Quinoco Consolidated Partners, L.P., Quinoco Petroleum, Inc. and QMH Oil & Gas, Ltd., Plaintiffs-Appellants,
v.
ARKLA ENERGY RESOURCES, a Division of Arkla, Inc. Defendant-Appellee.
No. 26,795-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 1995.
Rehearing Denied June 15, 1995.
*56 F. Henri Lapeyre, Jr., Matthew J. Randazzo, III, Lapeyre, Terrell & Randazzo, for plaintiffs/appellants.
Michael E. Riddick, David N. Matlock, Blanchard, Walker, O'Quin & Roberts, for defendant/appellee.
Before MARVIN, STEWART and PRICE (Pro Tempore), JJ.
PRICE, Judge Pro Tempore.
Defendant, Arkla Energy Resources (AER), entered into a compromise agreement on March 1, 1989, purporting to settle all "take or pay" claims under gas purchase contracts with plaintiffs, Quinoco Petroleum, Inc., and its affiliated entities, E.M. Nominee Partnership Company, and Quinoco Consolidated Partners, L.P. (Quinoco) and to settle and dismiss the suit filed by these plaintiffs in Caddo Parish to enforce a prior compromise of claims under a contract known as the Grand Cane Contract, affecting wells in the Bethany Longstreet Fields of DeSoto Parish. A dispute thereafter arose as to whether a contract known as the ENI Joint Venture 1979 IV, affecting a 37.5 percent of the production from the Farmers Union Well (FU) in Oklahoma, was included in this compromise agreement. The ENI contract with AER contained a "take or pay" provision which allegedly had been violated while the contract was in effect although the contract had been terminated prior to the date of the agreement at issue. The FU well interest had been acquired by the Quinoco entities on February 1, 1985, and had been transferred by assignment from Quinoco and its affiliates to QMH, a limited partnership between Quinoco and WMH, on May 31, 1988, about nine months before the execution of the disputed settlement agreement at issue in this litigation. Notice of this assignment was not given to AER.
Plaintiffs, as named above and joined by QMH, filed this suit for a declaratory judgment to determine whether or not the claims for damages for take or pay violations of the ENI contract were waived by the March 1, 1989, compromise agreement between AER and Quinoco.
Plaintiffs and defendant each filed motions for summary judgment relying on conflicting interpretations of the contract document. AER contends the ENI (FU) contract was within the scope of the compromise whether it was specifically listed on an attached exhibit or not, relying on the following provisions of the written agreement:
The parties acknowledge that it is their intent to include all gas purchase contracts between AER as Buyer and Quinoco as *57 Seller on Exhibit A list and the parties will execute any additional documents that may be required to include any other such contracts that may have been omitted from the Exhibit A list.
Seller hereby waives any and all claims relating to or arising out of the Contracts and the 1985 Settlement Agreement (except for routine accounting adjustments) including any failure to take gas or to pay for gas not taken by Buyer, or to make additional prepayments, and including any claims relating to or arising out of calculation of the payment due for gas actually delivered....
Plaintiffs' motion alleged it was never intended that the ENI contract was to be settled by the subject compromise agreement primarily because it was not included on the list of contracts referred to as Exhibit A of the written agreement nor was the FU well listed on Exhibit E, which was a list of wells in which Quinoco warranted it had an interest which would be subject to the recoupment provision of the settlement agreement. Plaintiffs additionally contended that as this interest had been assigned to a third party, QMH, prior to the execution of the compromise agreement, Quinoco would not have intended to include it in the waiver of claims.
The trial court granted AER's motion for summary judgment and denied plaintiffs' motion.
On appeal from the summary judgment granted to AER, this court ruled that the issue should not be determined on a motion for summary judgment because:
The issue whether the three plaintiffs who were parties to the agreement waived any claims that they may have had under the ENI Contract is purely factual and is determined by the intent of the parties to the agreement. The issue whether those plaintiffs waived the claims of the fourth plaintiff, QMH, perhaps a separate entity who obviously was not a party to the settlement agreement, presents both a question of fact (did the Quinoco parties intend to waive any claims under the ENI Contract?) and a question of law (could the Quinoco parties have validly waived those claims on behalf of their assignee, QMH, who was not a party to the settlement agreement?).
Because the intent of the contracting parties is a disputed issue of material fact, we find that neither party is entitled to summary judgment. We express no opinion on the legal issue whether the Quinoco parties could have validly waived QMH's claims under the ENI Contract if, in fact, the Quinoco parties are found to have "intended" to do so.
EM Nominee Partnership Company, Quinoco Consolidated Partners, L.P., Quinoco Petroleum, Inc. and QMH Oil & Gas, Ltd. v. Arkla Energy Resources, A Division of Arkla, Inc., 615 So.2d 1369 (La.App. 2d Cir. 1993).
For a more complete discussion of the background of this litigation the reader is referred to the above cited opinion of this court.
After a trial on the merits following remand to the trial court, judgment was rendered for defendant, AER, on a finding by the trial judge that "Quinoco's claim for damages under the ENI contract were not transferred in the assignment to QMH" and "the preponderance of the evidence presented at trial, in the form of correspondence between the parties and testimony regarding their negotiations, supports the explicit language in the contract: the parties intended to settle all claims as to all contracts between them."
Plaintiffs have appealed this judgment contending the trial court erred:
(1) in holding that Quinoco did not assign its ENI Contract claim to QMH;
(2) in holding that Quinoco intended to waive or release QMH's Contract claims;
(3) in holding that the settlement agreement, dated March 1, 1989, by and between Quinoco and AER waived or released QMH's ENI Contract claims against AER; and
(4) in admitting into evidence testimony and documents relating to prior meetings and negotiations between Quinoco and AER.
*58 For the reasons stated herein we reverse the judgment of this trial court and render judgment for plaintiffs.

DISCUSSION
Plaintiffs have conceded in their supplemental brief to this court that Quinoco had the ability to have waived the ENI Contract claim at the time it executed the March 1, 1989 agreement if it had intended to do so. This concession by plaintiffs is made because of the lack of notice to AER of the assignment of this claim by either Quinoco or QMH in order for it have any binding affect on AER. This concession makes it unnecessary for us to decide whether the trial court was in error in finding there was no valid assignment of this right which is classified as a personal right when Quinoco assigned the mineral interest to QMH. Therefore for the purpose of our review, it is assumed that Quinoco had the ability to have waived this claim if the evidence shows it had intended to do so.
In their assignments of error plaintiffs contend the trial court should not have allowed defendant to introduce documentary and testimonial evidence of prior negotiations by the parties in attempting to settle their dispute. We do not find that the trial court was in error in permitting extrinsic evidence to define the scope of the compromise agreement in this instance. In Brown v. Drillers Inc., 630 So.2d 741 (La.1994), the supreme court discussed the application of LSA-C.C. Art. 3073 relative to the issue presented here as follows:
In applying the rule of construction set forth in LSA-C.C. Art. 3073, courts are guided by the general principle "that the contract must be construed as a whole and in light of attending events and circumstances." Succession of Teddlie, 385 So.2d 902, 904 (La.App. 2d Cir.), writ refused, 393 So.2d 742 (La.1980); LSA-C.C. Art. 2050. Thus, the intent which the words of the compromise instrument express in light of the surrounding circumstances at the time of execution of the agreement is controlling.
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined by the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Maltby v. Gauthier, 526 So.2d 455, 457 (La.App. 5th Cir.), writ denied, 531 So.2d 474 (La.1988); Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir. 1983). Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an in pari materia reading of LSA-C.C. Art. 3073's provision that a compromise extends only to those differences the parties' clearly comprehended and LSA-C.C. Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise. Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961).

Moak, supra stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following Moak, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.
Our review is therefore centered upon whether or not the trial court was manifestly in error or clearly wrong in its interpretation of the extrinsic evidence presented to it in resolving the dispute in favor of defendant AER. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Stobart v. State, through DODT, 617 So.2d 880 (La.1993). The standard of appellate review set forth in the Arceneaux and Stobart cases has been tempered somewhat by the more recent decision in Ambrose v. New Orleans Police Ambulance Service, 639 So.2d 216 (La.1994) in which the court clarified its views as follows:
Notwithstanding the court's earlier guidance to reviewing courts in Stobart v. *59 State, through DOTD, 617 So.2d 880 (La. 1993), it was not our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support.
Following this standard of appellate review we find the trial court was clearly wrong in concluding that the evidence and contract provisions showed the parties intended to include the ENI Contract claims within the waiver provision of the compromise agreement.
The extrinsic evidence, which the trial court permitted over the plaintiff's objection, showed that the objective of the negotiations between officials of AER and Quinoco was to settle the Grand Cane gas purchase contract dispute which had been ongoing for a considerable period of time with no gas being produced from some 28 wells under this contract. The testimony shows that Quinoco's vice president, Sam Washburn, contacted Hugh Maddox, Vice President of AER, in the early spring of 1988 seeking to settle the dispute under the Grand Cane Contract so that Quinoco could begin to receive revenue from this field which it badly needed to enhance its cash flow. AER was anxious for a settlement as its right of recoupment by taking gas under a settlement agreement with Quinoco's predecessor under this contract, May Petroleum, was about to run out and there was a dispute over whether a refundable obligation existed as an alternative to gas recoupment.
There is testimony by AER officials that during this phase of the negotiations Washburn, representing Quinoco, informed representatives of AER of the existence of several claims under gas purchase contracts in Oklahoma including the ENI, FU Well Contract claim. Also that he suggested a value for which it might be settled. These negotiations were unsuccessful and in August 1988, Quinoco filed suit in Caddo Parish to enforce its Grand Cane gas purchase contract claims. In the meantime, on May 31, 1988, Quinoco had assigned all of its pro rata interest in the FU well to QMH in connection with the formation of QMH partnership.
The testimony further shows that in January, 1989, negotiations to settle the Grand Cane Contract and the Caddo Parish suit in connection therewith resumed with a new negotiating team for both parties. Quinoco was represented by Mike Gregory and Cathleen Osborn. AER by Jim Cantwell and Kay Medlin.
During this phase of negotiations, which ultimately resulted in the March 1, 1989 settlement agreement, there was no evidence to show any member of the negotiating team for either party had an awareness of the ENI Contract affecting the FU well in Oklahoma. To the contrary, the ENI Contract was not mentioned or discussed during this time frame.
The evidence shows that during the final phase of the negotiations after the parties had agreed upon a recoupable amount for the Grand Cane Contract of $8,950,000, Quinoco was reluctant to agree to the "all contracts" provisions which AER insisted be included in the agreement. Quinoco requested a list of the other contracts which existed between the parties so that it could evaluate these claims to add to the settlement amount. The response by AER showed, after a search of its records, there were four additional contracts in several counties in Oklahoma. AER requested Quinoco to add any other contracts which their records might show. The ENI Contract was not disclosed by either research. The testimony of Michael Gregory shows Quinoco made an evaluation of the claims under the contracts in Oklahoma listed by AER which resulted in Quinoco's determination *60 of an additional value of $1,500,000 for these contract claims. This figure was communicated to AER representative, Jim Cantwell and the agreement was consummated.
Cantwell's testimony is to the effect that AER had no intent to allocate any specific amount to the additional gas contracts covering the Oklahoma wells but considered the $1,500,000 as a lump payment for the inclusion of an "all contracts" provision in the settlement agreement.
The trial court apparently accepted the AER officials' version and rejected the testimony of Quinoco's witness.
The court gave no specific evidentiary findings to support its conclusion that "the settlement agreement here clearly and unambiguously reflects an intent by all parties to settle and compromise all claims arising out of all gas purchase contracts between AER and Quinoco, whether specifically itemized or not." The court made only a general finding that the preponderance of the evidence, documentary and testimonial, "supports the explicit language of the contract. The court rejected the testimony of Quinoco officials who testified their intent was to settle only existing contracts with AER, all of which they believed to be itemized, and not terminated or expired gas purchase contracts.
When this contract and the other evidence are analyzed under the rules of the civil code articles providing for interpretation of contracts, LSA-C.C. Arts. 2045-2057, it becomes clear that the trial court erred in its interpretation of the intent of the parties. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole (emphasis added).
The entire tenor of the compromise agreement is directed toward settlement of existing gas purchase contracts, not terminated or expired contracts.
The agreement is primarily concerned with the Grand Cane Contract which covers a large number of wells in DeSoto Parish. As an ancillary matter a few other contracts acquired by Quinoco from May Petroleum, which are located in Oklahoma, were included. The ENI Contract was not acquired from May Petroleum.
The "all contracts" clause is provided for under Section 1 of the written agreement entitled Amendment to Contracts. This provision provides for an amendment to all existing gas purchase contracts to modify the deliverability obligations of gas during the remaining term of each contract to conform to the provisions of the subject agreement. Further, the recoupment provisions under Section 3 of the settlement agreement would be meaningless in relation to the inclusion of a terminated or expired contract.
Another provision of the settlement agreement which would lend support to Quinoco's position that it had no intent to waive the ENI contract is the warranty requirement of Section 6(b) of the agreement whereby the seller warrants it is the owner of the gross working interest listed in Exhibit E to the agreement. It is not logical to assume Quinoco would have intended to violate this warranty by including a property which it had assigned to a third party some nine months prior thereto. For the purpose of determining Quinoco's intent, it is immaterial as to whether the assignment of the mineral interest in the FU well was a valid assignment of the claim for damage under the contract as well. What is important is that Quinoco thought it had legally transferred the claim to QMH and had so indicated by timely notifying the operator of the FU well unit, A.C. Black, that the assignment had been made.
The evidence shows that the contract provisions at issue were prepared by AER and that the waiver provisions were borrowed from prior settlement forms. Any lack of clarity such as whether or not terminated or expired contracts were included should be construed against AER.
The burden of proof in this case belongs to AER. In brief to this court it contends that as the suit for declaratory judgment was brought by Quinoco it should have the burden of proof. We hold that since AER has urged the compromise as a bar to the enforcement of the claim which Quinoco has asked to be recognized, this is *61 an affirmative defense and AER therefore has the burden of proof. See Brown v. Drillers, supra, at page 747[2-5].
It was AER's burden to show that the general waiver of the "all contracts" provision on which it relies was intended to include claims under terminated gas purchase contracts as well as existing contracts, and that Quinoco intended to waive the claim which had accrued under the ENI Contract prior to its termination in spite of having executed an assignment purporting to transfer the claim to QMH some months prior to the settlement agreement. On this record AER did not meet this burden of proof.

DECREE
For the foregoing reasons the judgment appealed is reversed and it is ordered that there be judgment in favor of plaintiffs, E.M. Nominee Partnership Company, Quinoco Consolidated Partners, L.P., Quinoco Petroleum, Inc. and QMH Oil and Gas, Ltd. and against Arkla Energy Resources, a division of Arkla, Inc., declaring that the settlement agreement dated March 1, 1989, did not waive or release any claims of QMH Oil and Gas, Ltd. against Arkla, especially those claims raised in the litigation in Case No. CJ-86-11492, in the District Court of Oklahoma County, Oklahoma.
All costs, including this appeal are assessed to appellee.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, BROWN and STEWART, JJ., and PRICE, J. Pro Tem.
Rehearing denied.