809 So.2d 481 (2002)
Christian DIMITRI
v.
Josephine Desalvo DIMITRI, A/K/A Mrs. Frank Dimitri, Individually and as the Executrix of the Estate of Frank Dimitri and CNA International Reinsurance Co.
No. 2000-CA-2641.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 2002.
*482 W. Monroe Stephenson, New Orleans, Counsel for Plaintiff/Appellant.
Kevin L. Cole, Vicki A. Turko, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, Metairie, Counsel for Defendant/Appellee.
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY.
*483 PATRICIA RIVET MURRAY, J.
Plaintiff, Christian Dimitri, appeals the trial court's judgment maintaining the exception of res judicata as to his claim for damages allegedly suffered in a slip and fall accident that occurred at a nightclub owned by Josephine Dimitri and insured by CNA International Reinsurance Company (CNA). For the reasons that follow, we reverse.

FACTS
Christian Dimitri filed suit on February 2, 1998, against Josephine Dimitri,[1] a/k/a Mrs. Frank Dimitri, individually, and as the executrix of the estate of Frank Dimitri, and her insurer, CNA, for damages he allegedly sustained in an accident on February 15, 1997. The defendants answered denying liability and asserting numerous affirmative defenses. Included in those affirmative defenses was an assertion that Mr. Dimitri's claim had been compromised.
CNA filed a peremptory exception of res judicata alleging that on October 17, 1997, Mr. Dimitri signed a Release of All Claims which released all claims for personal injuries and all other damages resulting from the alleged accident for the sum of $2,164.50. In support of the exception, CNA attached the release and Mr. Dimitri's admission that the signature on the release was, in fact, his.
Mr. Dimitri opposed the exception advancing a number of reasons why his claims were not barred by res judicata. Specifically, he alleged that the release was not valid because he had signed the form in the section to be executed by the notary and because he was led to believe that the agreement covered only the payment of his then current medical expenses. He supported his opposition with an affidavit averring that he discussed only the payment of his current hospital and doctor bills with the insurance adjuster, and that the adjuster told him that he would need a release for the current hospital and doctor bills in order to obtain a check to cover those expenses. Mr. Dimitri stated that, subsequent to that conversation, he received a release form in the mail from the adjuster for $2,164.50, the amount of his then current medical bills. At the time he signed the document his left wrist was in a cast, his right arm in a sling, and he still was undergoing medical treatment. He knew, therefore, that he would incur additional medical expenses and that he had a claim for personal injuries. Based on the representations of the insurance adjuster, he believed it was necessary for him to sign the form in order to have the insurance company pay his current medical bills.
In his affidavit, Mr. Dimitri further averred that he had no intention of executing a release of his entire claim for medical expenses and personal injuries for the amount of his then current medical bills when he had no idea of the extent of his injuries or his medical expenses. He still further averred that, although the release form was for payment of $2,164.50, the check he subsequently received from the insurance company was only for $1,664.50. He then engaged an attorney who returned the check to the insurance company.
In support of his opposition to the exception, Mr. Dimitri also offered the affidavit of his brother, Peter F. Dimitri. Peter Dimitri averred that he was the one who notified the insurance agent of the accident in which his brother was injured. He told the adjuster, Jeff Washburn, that his brother was seriously injured, could not work, and could not pay the bills for *484 treatment of his injuries. He averred that Mr. Washburn told him that he would send a release form for his brother's current medical expenses so that he could get the insurance company to issue a check for those expenses. Peter Dimitri stated that he knew his brother did not intend to release his claim for personal injuries and total medical expenses in exchange for the payment of an amount equal to his then current medical expenses. Finally, Peter Dimitri averred that Mr. Washburn discussed payment of his brother's current hospital and doctor bills only, and never mentioned a personal injury claim.
Following a hearing, the trial court sustained CNA's exception of res judicata and dismissed the case, with prejudice. This appeal followed.

DISCUSSION
A compromise is valid if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Dumas v. Angus Chemical Co., 31969 (La.App. 2 Cir. 8/20/99), 742 So.2d 655; Walk Haydel & Associates, Inc. v. Coastal Power Production Co., 98-0193 (La.App. 4 Cir. 9/30/98), 720 So.2d 372, 373 (citing Pat O'Brien's Bar, Inc. v. Franco's Cocktail Products Inc., 615 So.2d 429 (La.App. 4th Cir.1993)). Transactions and compromises regulate the differences which the parties clearly intended to include in them; they do not extend to differences that the parties never intended to include in them. Tarver v. Oliver H. Van Horn Co., Inc., 591 So.2d 1366 (La.App. 4th Cir.1991); Munna v. Mangano, 404 So.2d 1008 (La.App. 4th Cir.1981); La. C.C. art. 3073.
Mr. Dimitri argues that there was no valid compromise because there was no meeting of the minds as to what was intended to be included. He had no intention of settling all his claims for medical bills and personal injuries when he signed the form sent to him by the adjuster. Because he never discussed anything with the adjuster except the payment of his medical expenses as of October 17, 1997, and because the adjuster represented to both him and his brother that the release form had to be signed in order for Mr. Dimitri to obtain payment of those medical bills, he mistakenly believed that those bills were all that was covered by the release. He contends, therefore, that this transaction should be rescinded because there was error as to the subject matter of the dispute being settled.
CNA argues that Mr. Dimitri is presumed to know the contents of the release he signed and that he cannot avoid its obligations by pretending that he did not read it, that it was not explained to him, or that he did not understand it. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Myers v. Burger King Corp., 618 So.2d 1123 (La.App. 4th Cir.1993); Brown v. Simoneaux, 593 So.2d 939 (La.App. 4th Cir. 1992). Because the language of the release is clear and explicit, CNA argues that extrinsic evidence, beyond the four corners of the agreement, may not be considered in order to determine the parties' intent.
The meaning and intent of the parties to a written instrument, including a compromise, ordinarily is determined from the four corners of the instrument, and parol evidence may not be admitted to explain or contradict the terms of the instrument. However, based on an in pari, materia reading of the provision of La. C.C. art. 3073 that a compromise covers only differences the parties clearly contemplated and La. C.C. art. 3079 that error as to the subject matter in dispute is grounds to rescind a compromise, a special exception to the extrinsic evidence rule has been recognized for compromise agreements. *485 Moak v. American Automobile Insurance Co., 242 La. 160, 134 So.2d 911, 913 (1961). Following Moak, a jurisprudential rule was developed that "a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by a release." Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 749. Thus, where substantiating evidence is presented to establish that (1) the releasor was mistaken as to what he was signing, even though fraud may be absent; or (2) that the releasor did not fully understand the nature of the rights being released or did not intend to release certain aspects of his claim, extrinsic evidence may be considered to determine exactly what differences the parties intended to settle. Id.
We find the facts of this case are very similar to the facts of Moak, in which the Supreme Court set aside a general release of all claims, known and unknown, because the circumstances indicated that the plaintiff did not intend to fully settle her claim. In finding that the release was invalid for lack of mutual intent, the Court considered several factors: there was no discussion between the plaintiff and the insurance adjuster about the plaintiff's personal injury claim; the amount paid by the insurance company coincided exactly with the uncollected balance of the personal effects Mr. Moak lost, which was what the plaintiff testified she thought was covered by the release; the amount of the release seemed extremely small in light of the nature and extent of the plaintiffs injuries; and the conduct of the adjuster was such as to warrant the understanding that Mr. and Mrs. Moak testified they had as to what was being released. Moak. 134 So.2d at 914.
In this case, Mr. Dimitri and his brother have submitted affidavits attesting to the fact that there was no discussion with the adjuster about anything other than Mr. Dimitri's then current medical expenses.[2] The amount of the settlement check issued, which would not even cover Mr. Dimitri's medical expenses as of October 17, 1997, seems grossly insufficient to compensate him for the nature and extent of the injuries he has alleged. Mr. Dimitri has averred that he was misled by the adjuster who told him that he needed to sign the release form in order to have his current medical bills paid. Peter Dimitri, Mr. Dimitri's brother, has averred that the adjuster also told him he would send a release for current medical expenses to Mr. Dimitri so that the insurance company could issue a check for the amount of the current medical expenses. Finally, the check tendered to Mr. Dimitri by CNA was for $1,664.50, which is $500 less than both the amount recited in the release and Mr. Dimitri's medical expenses as of the date the release was signed. CNA, in its brief, represents that the tendered amount was calculated by subtracting from the amount of Mr. Dimitri's medical expenses the $500 deductible under its insured's policy, "pursuant to the agreed upon settlement." The release, however, makes no mention of the deductible, nor does it contain language that would support a claim that Mr. Dimitri agreed to such a deduction.
Compromise agreements are legally favored, and the party seeking to establish *486 the invalidity of a compromise agreement has the burden of proof. Saunders v. New Orleans Public Service, Inc., 387 So.2d 603, 605 (La.App. 4th Cir.1980). As the party seeking to invalidate the compromise agreement, Mr. Dimitri has the burden of proof. We conclude that he met his burden. The affidavits Mr. Dimitri submitted of both himself and his brother raise serious questions as to whether he and the adjuster reached a meeting of the minds on the terms of any proposed settlement. The fact that the check defendant tendered was for $500 less than the amount recited in the release agreement buttresses Mr. Dimitri's argument that there was no meeting of the minds regarding the settlement terms. Based on this evidence, we conclude that Mr. Dimitri has met his burden of proving that the release agreement he signed was invalid.
For these reasons, the judgment of the trial court maintaining the defendant's exception of res judicata and dismissing the plaintiff's claim is reversed.
REVERSED
NOTES
[1] Josephine Dimitri is the plaintiff's grand-mother.
[2] CNA does not allege that its adjuster, Mr. Washburn, specifically explained to Mr. Dimitri or his brother that he would be forfeiting his right to make a claim for any additional medical expenses or any other damages or personal injury by signing the release. Nor does any of the evidence offered by it in support of its exception rebut the affidavits of Mr. Dimitri and his brother with regard to what was discussed between them and Mr. Washburn.