928 So.2d 559 (2006)
Michael A. DRAPCHO
v.
Suzanne Parke DRAPCHO.
No. 2005 CA 0003.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
Writ Denied May 5, 2006.
*561 Margaret H. Kern, Covington, Counsel for Plaintiff/Appellee Michael A. Drapcho.
Frank P. Tranchina, Jr., Mark J. Mansfield, Covington, Counsel for Defendant/Appellant Suzanne Parke Drapcho.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
KUHN, J.
Defendant-in-rule/appellant, Suzanne Parke Drapcho ("Dr.Parke") appeals the trial court's judgment that ordered her to reimburse plaintiff-in-rule/appellee, Michael A. Drapcho ("Dr.Drapcho"), for tuition and registration expenses he paid to enroll their minor children in a private school. The judgment ordered Dr. Parke to pay the amount of $6,245.00, together with interest from August 29, 2001, the date Dr. Drapcho filed a show cause rule seeking recovery of these expenses. We affirm that part of the judgment ordering Dr. Parke to pay the amount of $6,245.00, but we amend the judgment with respect to the interest award.

I. FACTUAL AND PROCEDURAL BACKGROUND
While Dr. Drapcho and Dr. Parke were married, two children were born of their marriage. The children attended a private school, and when the parties divorced in January 2000, they agreed that each would pay a specified percentage share of their children's private school tuition/registration expenses. In accordance with this agreement, Dr. Drapcho paid to the school his percentage share of the children's tuition/registration expenses for the 2001-2002 school term, which amounted to $6845.00. According to Dr. Drapcho, after he made this payment, Dr. Parke unilaterally decided to enroll the children in a public school. On August 29, 2001, Dr. Drapcho filed a rule, pursuant to which he sought to maintain the children in the private school, or in the alternative, reimbursement from Dr. Parke for the tuition/registration expenses already paid to the school.
On October 4, 2001, the parties entered into a stipulation and consent judgment wherein they stipulated that the children would attend the public school, and that "[Dr. Drapcho] shall continue to attempt to obtain a refund of the registration and tuition expenses paid in connection with enrollment of the minor children in [the private school] for the 2001-2002 school year." The consent judgment further provided that "[Dr. Parke] shall reimburse [Dr. Drapcho] for registration and tuition expenses not refunded by [the private school]. The reimbursement payment shall be due by [Dr. Parke] to [Dr. Drapcho] at the time of the partition of their former community."
Thereafter, the parties participated in mediation before partitioning their community property assets and debts. During the mediation process, the parties addressed other outstanding reimbursement claims. Dr. Parke testified that she had asserted reimbursement claims for the contribution of her separate funds used to acquire the former community home and for certain community funds used to pay Dr. Drapcho's student loans, which apparently were incurred prior to the parties' marriage. Dr. Drapcho also asserted a claim for reimbursement based on Dr. Parke's occupancy of the former community home during the parties' separation.
*562 On December 21, 2001, the parties signed a consent judgment of partition of community property. Therein, the parties specified the respective properties and debts that had been allocated to each party. The consent judgment also stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties specifically waive any and all claims for reimbursement and/or accounting from each other.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties acknowledge that each has paid certain community debts and each waives any further reimbursement from the other for the payment of these community debts.
On March 5, 2004, Dr. Drapcho filed a show cause rule, wherein he asserted that the private school had refunded him only $600.00 of the total sum that he had paid for the tuition/registration expenses. He further set forth that although Dr. Parke had been ordered to pay the balance of the funds at the time of the partition of their former community, despite his repeated amicable demands, she had refused to pay him. Dr. Drapcho alleged that based on this refusal to pay, Dr. Parke was in contempt of the court's October 2001 order.
Following a June 23, 2004 hearing on the rule, the trial court signed an August 6, 2004 judgment ordering that an executory judgment issue against Dr. Parke in the amount of $6,245.00, together with interest from August 29, 2001, with such sum payable on or before thirty days from the hearing date. Dr. Parke has suspensively appealed this judgment, alleging that the trial court erred in: 1) holding that the December 21, 2001 consent judgment did not waive all reimbursement claims between the parties; 2) taking judicial notice of the judgment calling for reimbursement and, consequently, shifting the burden of proof to Dr. Parke; 3) not granting a new trial; and 4) charging Dr. Parke interest retroactive to August 29, 2001.

II. ANALYSIS
Louisiana Civil Code article 3071 defines a compromise as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." Louisiana Civil Code article 3078 declares the effect of a compromise, providing that a compromise has the legal efficacy of a judgment, possessing "a force equal to the authority of things adjudged." Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 747.
A compromise is a written contract. La. C.C. art. 3071; Brown v. Drillers, Inc., 630 So.2d at 748. As such, the compromise instrument is the law between the parties, which must be interpreted according to the parties' true intent, and is governed by the same general rules of construction applicable to contracts. Id.
Louisiana Civil Code article 2046 sets forth a general rule of construction, providing, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Louisiana Civil Code article 3073 sets forth a supplementary rule of construction that governs the interpretation of the operative language and the determination of the scope of a compromise agreement. Brown v. Drillers, Inc., 630 So.2d at 748. Transactions or compromise agreements regulate only the differences that appear clearly to be comprehended in them by the intention of the parties, whether it is explained in a general or *563 particular manner, unless it is the necessary consequence of what is expressed. They do not extend to differences that the parties never intended to include in them. La. C.C. art. 3073.
Accordingly, in determining those matters the parties intended to settle, we must consider the contract as a whole and in light of attending events and circumstances. Ortego v. State, Dep't of Transp. and Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Id., 96-1322 at p. 7, 689 So.2d at 1363-64.
In Brown v. Drillers, Inc., the Supreme Court addressed when it is appropriate to consider extrinsic evidence in construing the intent of the parties to a compromise agreement:
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an in pari materia reading of LSA-C.C. Art. 3073's provision that a compromise extends only to those differences the parties' clearly comprehended and LSA-C.C. Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise. Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961).

Moak, supra stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following Moak, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.
Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA-C.C. Art.2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument. When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law. . . .
Brown v. Drillers, Inc., 630 So.2d 748-50. (Some citations omitted.)

*564 A. Scope of the December 21, 2001 "Consent Judgment of Partition of Community Property"
In the instant matter, Dr. Parke does not challenge the validity of or seek to rescind either the October 4, 2001 stipulation and consent judgment or the December 21, 2001 consent judgment of partition of community property. Rather, she asserts that when she and Dr. Drapcho agreed that she would pay the tuition/registration reimbursement at the time of the community property partition, their agreement converted the reimbursement debt from a child support obligation to a community property obligation. Based on the terms of the December 2001 consent judgment, which provided for the waiver of "any and all claims for reimbursement and/or accounting from each other," she argues that Dr. Drapcho waived or released her obligation to reimburse him for the tuition/registration expense as part of the community property partition. Thus, she claims that the December 2001 agreement clearly and unambiguously waived her prior obligation.
Based on our examination of the language of the two compromise agreements, we find no merit in Dr. Parke's contentions. The mere fact that the parties agreed that Dr. Parke would reimburse Dr. Drapcho for the tuition/registration expense at the same time that the parties finalized their community property settlement did not transform the nature of the obligation. Neither the initial obligation to pay the tuition/registration expenses nor the obligation to reimburse those expenses was a community debt; neither obligation arose until long after the community had been terminated. Thus, we find no error in the trial court's conclusions that in executing the December 2001 agreement, the parties intended to compromise only the reimbursement claims that related to the community and that Dr. Parke's obligation to reimburse the tuition/registration expense was not a claim related to the parties' former community.
Even if we consider parole evidence regarding the intent of the parties, we find that Dr. Parke offered no substantiating evidence of mistaken intent; she did not testify that she was mistaken as to what she was signing, and she did not relate that she did not fully understand the nature of any rights she released or that she did not intend to release certain aspects of her claim. She merely testified that she thought the effect of what she signed was that Dr. Drapcho released her from her obligation to reimburse him for the private school tuition/registration expense. Dr. Drapcho also testified during the hearing. He explained that he did not intend to compromise Dr. Parke's obligation to reimburse him for the tuition/registration expense; he intended only to compromise reimbursement claims that pertained to the parties' community property.
Based on the testimony presented, the trial court found that Dr. Parke failed to prove that, upon executing the December 2001 consent judgment, both parties clearly comprehended a compromise of Dr. Parke's obligation to reimburse Dr. Drapcho for the children's tuition/registration expense. This obligation had already been reduced to a final judgment in the October 2001 consent judgment, and the December 2001 judgment, which effected a separation of the parties' community assets and debts, neither referenced the earlier consent judgment nor specifically referenced Dr. Parke's non-community obligation.[1] The trial court's finding as to the intent of the *565 parties in entering into a compromise agreement is a finding of fact that will not be disturbed by an appellate court in the absence of manifest error. Angelo and Son, Inc. v. Rapides Bank & Trust Co. in Alexandria, 95-992, p. 6 (La.App. 3d Cir.4/10/96), 671 So.2d 1283, 1286, writs denied, 96-1173, 96-1204 (La.6/21/96), 675 So.2d 1083. Based on the facts of the present case, we find no manifest error in the trial court's finding regarding the parties' intent.
Although Dr. Parke complains that the trial court took judicial notice of the October 2001 consent judgment, we recognize that the judgment was included in the trial record and that Dr. Parke concedes its existence and does not challenge its validity. Dr. Parke's actual complaint is that once the trial court considered the terms of the October 2001 consent judgment, it shifted the burden of proof to her. She asserts this was error.
In its reasons for judgment, the trial court stated:
As to the burden of proving the initial entitlement to the reimbursement for the tuition, that burden falls, of course, upon Dr. Drapcho. He has carried that burden, simply by the introduction of the matters for which the Court will take judicial notice, that being the judgment calling for that reimbursement. The burden then shifts to Dr. Parke to prove that, in some fashion, that money was satisfied from the consent judgment of partition of community property, dated December 21, '01.
Certainly, that [October 2001] judgment is not specifically referenced in the consent judgment. Whether accidentally or by design, depends, of course, upon whose testimony is accepted regarding that. That being said, since that burden of proof falls to Dr. Parke, she has failed to carry that burden of proof in connection with that issue.
As the plaintiff-in-rule, Dr. Drapcho had the initial burden of establishing his entitlement to reimbursement; Dr. Drapcho established his entitlement based on the terms of the October 2001 consent judgment alone. In defending Dr. Drapcho's claim, Dr. Parke argued that the December 2001 consent judgment compromised her obligation to pay the tuition/registration expense. In essence, she urged that the terms of the December 2001 consent judgment operated to waive or release her prior obligation. The party asserting a release of an obligation bears the burden of proof on the validity and scope of the release. See Brown v. Drillers, Inc., 93-1019 at p. 6, 630 So.2d at 747. Accordingly, we find no error in the trial court's determinations regarding the burden of proof.

B. New Trial
Dr. Parke filed a motion for new trial, urging that the trial court's judgment was contrary to the law and evidence. She further sought to introduce the testimony of the mediator who had worked with the parties between the dates of the two consent judgments. Specifically, Dr. Parke sought to introduce testimony from the mediator regarding what the parties had discussed in relation to Dr. Parke's obligation to reimburse the tuition/registration expenses.
The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. Rao v. Rao, 05-0059, p. 7 (La.App. 1st Cir.11/4/05), 927 So.2d 356. Based on our analysis of the merits of this case, the trial court's judgment was not contrary to the law and the evidence. Thus, Dr. Parke was not entitled to a new trial on that peremptory *566 basis (see La. C.C.P. art. 1972(1)), and the trial court did not abuse its discretion in denying her motion for new trial in that respect. Although Dr. Parke also urges that a new trial should have been ordered to allow her to introduce the mediator's testimony, she failed to establish any newly discovered evidence that she could not have discovered with due diligence prior to the hearing. See La. C.C.P. art. 1972(2). Moreover, we find no abuse of discretion in the trial court's denial of a new trial on discretionary grounds. See La. C.C.P. art. 1973.

C. Interest Award
Dr. Parke challenges the trial court's award of interest on the $6,245.00 award from the date of judicial demand, August 29, 2001. She asserts that Dr. Drapcho did not receive the $600 refund from the school until August 2002, and that until that time, the parties did not know how much Dr. Drapcho was entitled to recover. She contends that she should not be obligated to pay interest for the time period between August 2001 and August 2002. Further, she argues that Dr. Drapcho did not establish when he made formal demand for the tuition/registration expense reimbursement.
Louisiana Civil Code article 2000 states, "When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due. . . ." According to the terms of the October 4, 2001 judgment, the parties agreed the tuition/registration reimbursement was due "at the time of the partition of their former community." When a term for the performance of an obligation is either fixed, or is clearly determinable by the circumstances, the obligor is put in default by the mere arrival of that term. La. C.C. art. 1990. Thus, once the parties partitioned their community property, Dr. Drapcho did not have to take any action to place Dr. Parke in default. The partition of the former community occurred on December 21, 2001, when the parties executed the second consent judgment. At that time, Dr. Parke was obligated to pay Dr. Drapcho the unrefunded tuition/registration expenses.
We acknowledge that Dr. Drapcho had not yet received the $600 refund from the school as of December 21, 2001. However, the terms of the October 4, 2001 consent judgment required Dr. Parke to reimburse Dr. Drapcho for the tuition/registration expenses not refunded by the private school. As of the date of the partition, the unrefunded amount was actually more than the amount sought by Dr. Drapcho in his 2004 show cause rule. The fact that the trial court's August 6, 2004 judgment reflected the private school's $600 refund to Dr. Drapcho has no bearing on the simple fact that Dr. Parke had the use of the money to which Dr. Drapcho was entitled since December 21, 2001. The later determination by the trial court of the "amount" due under the terms of the October 2001 consent judgment relates back to the earlier due date to allow for precise calculation of the amount of interest actually due to make Dr. Drapcho whole. See Sharbono v. Steve Lang & Son Loggers, 97-0100, p. 6 (La.7/1/97), 696 So.2d 1382, 1386. Accordingly, we amend the judgment to provide that interest is due on the sum of $6,245.00 from December 21, 2001, rather than August 29, 2001.

III. CONCLUSION
Based on the above reasons, we amend that portion of the judgment addressing interest to provide that interest is due on the $6,245.00 award from the date of December 21, 2001. In all other respects *567 the judgment is affirmed. Each party is to pay one-half of the appeal costs.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.
GUIDRY, J., concurs.
NOTES
[1] The October 4, 2001 consent judgment was a final judgment as between the parties. Guidry v. Sothern, 98-1152, p. 4 (La.App. 1st Cir.5/14/99), 734 So.2d 928, 931.