STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-1078


EDWARD SIGNAL, JR.

VERSUS

JARED ROMERO, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 110819-F
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

**James Paul Lambert**
**Attorney at Law**
**P. O. Box 53083**
**Lafayette, LA 70505-3083**
**(337) 261-3737**
**Counsel for Plaintiff/Appellee:**
**Edward Signal, Jr.**

**Ian Alexander Macdonald**
**Longman Russo**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendants/Appellants:**
**BellSouth Telecommunications, Inc. d/b/a AT&T Louisiana**
**Jared Romero**

**EZELL, JUDGE**.

BellSouth Telecommunications, Inc., and Jared Romero appeal a trial court judgment which found that Edward Signal had a right to file suit against them for bodily injury claims. The Defendants argue that the trial court erred in refusing to enforce a release agreement between the parties and in not dismissing the claims against them.

## FACTS

On November 13, 2006, Edward Signal was using an on-ramp to enter Highway 90 from Willow Street in Lafayette, Louisiana. Jared Romero, a service technician with BellSouth, was directly behind him in his service truck. Mr. Signal edged forward to get a better view of the oncoming traffic and stopped. Mr. Romero thought Mr. Signal was merging, so he looked back to begin his merge. At the time, he took his foot off the brake and hit Mr. Signal from behind.

Although no injuries were reported at the scene, Mr. Signal went to the Medical Center of Southwest Louisiana complaining of a headache; neck, upper and lower back pain; and injury to both knees. He was diagnosed with strain in his neck and back and contusions to his knees. Flexeril was prescribed, and Mr. Signal was sent home.

Within a week of the accident, Donna Ellis, the liability claims manager for BellSouth, got an estimate to repair the damage to Mr. Signal's vehicle. The damages were estimated at $2,784.24. Ms. Ellis sent a check in the amount of $2,784.24 to Mr. Signal on November 21, 2008. The letter indicated that it was "full and final settlement of your claim."

On October 24, 2007, Mr. Signal filed suit against Mr. Romero and BellSouth for the bodily injuries he suffered in the accident. The Defendants answered asserting

1

the affirmative defense of res judicata claiming that Mr. Signal's claims had been settled. The case was tried before a judge on January 27, 2009. Judgment was entered on January 30, 2009, denying Defendants' exception of res judicata. General damages in the amount of $15,000.00 were awarded. Special damages in the amount of $14,524.49 were also awarded.

The Defendants appealed the judgment. They argue that the trial judge erred in refusing to enforce the release of claims.

**RELEASE**

The Defendants argue that the release language was clear and unequivocal and the trial judge erred in refusing to enforce the release agreement. In written reasons for judgment, the trial judge expressed his reasons for finding that the release did not bar Mr. Signal from asserting a personal injury claim as follows:

> Signal was 73 years old at the time of the accident. His education and reading abilities were, according to him, effectively at a third grade level. By cashing the check Signal reasonably assumed that it was for property damage only. Obviously the litigation-savvy BellSouth representative was trying to insulate his company from further liability at Signal's expense. This is not acceptable to the Court. The Court finds that it was reasonable, considering Signal's age and education, and the circumstances under which the check was sent and paid, for him to assume that the check was for property damage only. The Court finds that Signal did not fully understand the nature of the rights being released or that he did not intend to release certain aspects of his claim.

Aside from the letter mailed with the check indicating that the check was full and final settlement of the claim, the memo section of the check indicates that is for full and final settlement of the claim as well. BellSouth more particularly relies on the endorsement section on the back of the check (emphasis supplied) which reads as follows:

> Endorsement of this instrument fully releases BellSouth, its agents, employees and allied and associated companies, from any and all claims known and unknown for **property damages and/or bodily injury** arising out of the incident which occurred on or about the date shown.

2

This payment is not to be considered an admission of liability on the part of BellSouth.

At the time the check was written, La.Civ.Code art. 3071 provided:

> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

Louisiana Civil Code Article 3073 further provided:

> Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.

> The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.

Furthermore, La.Civ.Code art. 3079 provided:

> A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.

Since the Defendants are the ones who are relying on the release language to support their claim that Mr. Signal has no right to sue them based on res judicata, they are the ones who bear the burden of proof to establish the requisites for a valid compromise. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741. This includes "the parties' intent to settle the differences being asserted in the action in which it is interposed." *Id.* at 747.

One of the first cases to hold that a release was without effect due to error was *Moak v. American Automobile Insurance Co.*, 242 La. 160, 134 So.2d 911 (1961).

3

The supreme court found that a release signed by a husband and wife was not intended by them to release a claim for personal injury and so it was without effect because of error. The supreme court recognized that payment of $242.00 was the exact amount of the uncollected balance for the value of the destroyed personal effects in the automobile and was extremely small in view of the nature and extent of the wife's injuries. The supreme court also noted that there was nothing mentioned during the negotiations about a personal injury claim.

The supreme court in *Brown*, 630 So.2d at 749, recognized that a jurisprudential rule developed following *Moak*, 134 So.2d 911, "that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release." "Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal." *Brown*, 630 So.2d at 749.

The supreme court then recognized that courts have utilized a case-by-case analysis limiting the rule's application to cases:

> establishing either (1) that the releaser was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releaser did not fully understand the nature of the rights being released or that the releaser did not intend to release certain aspects of his or her claim.

*Id*; see *also Buford v. Blanchard*, 09-187 (La.App. 3 Cir. 10/7/09), 19 So.3d 1255.

In *Wyatt v. Maryland Casualty Co.*, 160 So.2d 383 (La.App. 2 Cir. 1964), the second circuit also found that an endorsement did not serve as a release of plaintiff's personal injuries. The release was printed on a draft made payable to the body repair shop and was for the exact amount of the vehicle repairs.

In *Dimitri v. Dimitri*, 00-2641 (La.App. 4 Cir. 1/30/02), 809 So.2d 481, the fourth circuit found that there was no mutual intent to release all claims. A check in

4

the amount of $1,664.50 could have never been considered to cover all medical expenses.

In the present case, seventy-three-year-old Mr. Signal was asked to sign a release a week after the accident. In *Wise v. Prescott*, 244 La.157, 151 So.2d 356 (1963), the supreme court recognized that a "rush release" has a high potential of error because it is obtained within a very short time of the accident. Neither the letter nor the memo section of the check indicated that it was a release of both property and bodily injury damages. The personal injury language was found in very tiny writing on the back of the check. Mr. Signal testified that the check was for the exact amount of the estimate to repair the car, so he presumed it was just to fix the car. He had no idea it was to be a final settlement. No evidence was offered by BellSouth that any representative had talked with Mr. Signal explaining that the check was for final settlement of any bodily injury claim he may have as a result of the accident. We find no error in the trial judge's ruling that Mr. Signal did not intend to release his bodily injury claims.

Mr. Signal also asked for an increase in the amount of general damages awarded by the trial court. However, he did not brief this error. Therefore, we consider it abandoned. *See* Uniform Rules – Court of Appeal, Rule 2-12.4.

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to BellSouth Telecommunications, Inc. and Jared Romero.

**AFFIRMED.**